SHERWOOD, administrator, &c. *vs.* WOOSTER.

Where the intestate was domiciled in the state of Louisiana at the time of his death, and left two children, one of whom, a daughter, then resided in the state of New-York, and the other, a son, had been absent and had not been heard of for twelve years; and the daughter, and her husband who had obtained letters of administration on the estate of the intestate here, presented their petition to the probate court in Louisiana, stating that she was the daughter of the intestate, and that he left no other descendants except the children of the petitioners, and praying that she might be declared sole heir to the estate of her father; and an order or decree of that court was made in her favor, according to the prayer of the petition; *Held,* that the decision of the probate court of Louisiana was not conclusive evidence of her right to the personal estate of the decedent in that state; so as to bar the claim of her brother, who subsequently appeared and claimed his share of the property.

And where the husband of the daughter, who was declared to be the sole forced heir of her father, subsequently received the proceeds of the personal estate of his father in law in Louisiana, and inventoried them as a part of the personal estate of the decedent, which had come to his hands as the administrator here; *Held,* that the surrogate, by whom such letters of administration had been granted here, had jurisdiction to decree payment of the share belonging to another child of the testator, who appeared and claimed the same in this state.

Law of Louisiana, relative to the administration of the estate of a decedent, in cases of intestacy, or of vacant successions, explained.

The donations or advances which the decedent has made to one of the heirs of an intestate succession, by the laws of Louisiana, as well as by the laws of this state, must be collated, or brought into hotch pot, in the distribution of the estate.

By the civil law, a gift from a parent to his child, intended as a marriage portion, as contradistinguished from a mere marriage present, is subject to collation.

The succession to the personal property of a decedent, is governed by the law of his domicil, at the time of his death.

Sherwood v. Wooster.

An administrator who retains the residuary estate, and uses it under the supposition that it belongs to him, in right of his wife as the sole distributee, is chargeable with interest, from the time another distributee appears and claims his share of the property.

THIS was an appeal from the sentence and decree of the surrogate of Chenango county, directing the appellant to pay to the respondent a sum of money, as the distributive share of the latter in the estate of Isaac Wooster deceased. The decedent had two children; Curtis, the respondent, and Sarah, the wife of the appellant in this suit. In 1819, Curtis Wooster, the son, who was an apprentice, left the service of his master and went abroad; and it was not known to his relatives whether he was living or dead, until more than twenty years afterwards. In 1821, Isaac Wooster, the intestate, removed to Baton Rouge, in the state of Louisiana, and resided there at the time of his death, in September, 1831. His daughter and her husband were then residing in this state. A few days after the death of I. Wooster, a petition was presented to the judge of probates for the parish of East Baton Rouge, by A. Winthrop, stating the death of the intestate, leaving no heirs in that state, and praying that he might be appointed curator of the vacant succession. Ten days notice of the application was then published; at the end of which time, no one appearing to object, Winthrop was appointed curator of the vacant succession of I. Wooster, the intestate, under the seal of the probate court. In January, 1832, Sherwood, the appellant, obtained letters of administration from the surrogate of Chenango county, upon the estate of his deceased father in law; and, as such administrator, he subsequently received a certain debt of about $2000, due to the intestate, in this state. In April, 1832, the wife of Sherwood, in connection with him, presented a petition to the probate court of East Baton Rouge, stating the death of her father, and the appointment of the curator of his vacant succession; that she was the legitimate child of the decedent, and that he had no other descendants, except the children of the petitioners; and praying that she might be decreed to be the sole heir, and that the curator might be ordered to deliver up to her, as such heir, the property and effects, books, credits and papers

belonging to the succession.    The petitioners subsequently pro-
duced the ex parte depositions of two witnesses, residing in this
state, stating that they were acquainted with the decedent and
his daughter, and that they were informed and believed that she
was his only surviving child, and his only descendant, except her
children.    And, upon that proof, the probate court made an order,
that Mrs. Sherwood be recognized as the legal and forced heir of
her father, I. Wooster, and that she be put into the possession of
the estate as such ;  and that the curator deliver the succession to
her, together with all notes, accounts, evidences of debt and
other papers and documents belonging thereto.    This decree
was made the 13th of June, 1832.

The appellant and his wife afterwards employed attorneys, in
Louisiana, to collect from the debtors residing there, the several
debts due from them to the estate of the decedent.    And such at-
torneys collected and remitted to the appellant two sums of
money, amounting together to $3568,85 ; one of which sums
was received in the summer of 1834, and the other in the spring
of 1835.    The intestate had, in his lifetime, also made advances
to his daughter, the wife of the appellant, to the amount of about
$2000.

In 1840, the respondent made his appearance, claiming to be
the son of the intestate and to be entitled to half of his estate, as
one of his heirs, and next of kin ;  and claiming also to be entitled
to half of the advancements to the daughter.    But the appellant
refused to recognize him as the son of the intestate, or to acknow-
ledge his claim to any part of the estate of the decedent.    In Jan-
uary, 1841, under an order of the surrogate, the appellant, as such
administrator in this state, made and filed an inventory of the
property and effects of the intestate ; in which inventory he ad-
mitted the receipt of the moneys collected in Louisiana, as
having come to his hands as administrator here.    He also inven-
toried several other demands, in favor of the estate, due from
persons living in Louisiana and elsewhere, which he had been
unable to collect.    He declined, however, to inventory the mo-
neys collected from the creditors residing in this state ; claim-
ing the same as a gift to himself.

Sherwood v. Wooster.

In February, 1841, the respondent applied to the surrogate, for an order requiring the administrator to account, and to pay over to the respondent his share of the estate of his deceased father. An order was made accordingly, and the appellant being duly cited, both parties appeared before the surrogate; where the identity of the respondent, as well as his claim to any part of the estate, and the items of the account of the administrator, and the amount of advances to Mrs. Sherwood, were contested. After hearing the testimony, the surrogate decided that the respondent had established his claim to be the son of the intestate, I. Wooster; that as the intestate was domiciled in Louisiana, and died there, the succession to his property must be governed by the laws of that state; but that the decree of the probate court of the parish of East Baton Rouge, declaring Mrs. Sherwood the sole heir of the intestate, and entitled to the succession, was not conclusive upon the rights of her brother. He also decided that the administrator here, having inventoried the moneys collected in Louisiana, as assets in his hands as such administrator, the surrogate's court was authorized to decree distribution thereof, according to justice and equity; that the money received by the appellant from the creditors in this state, was received by him as administrator; that the advances to the daughter of the intestate, made by him in his lifetime, were subject to collation, by the laws of Louisiana, and must be considered as a part of the estate of the decedent, in determining the share to which her brother was entitled in the distribution; that if the administration in this state was originally ancillary, it became the principal administration when all the property of the intestate was reduced to the possession of the administrator appointed here, and that the surrogate had thereby acquired jurisdiction to decree a final distribution; that the administrator had acted with due diligence in collecting the debts and claims due to the estate; that he was not chargeable with interest upon the money in his hands, while he supposed his brother in law was dead, and that he was entitled to the same in right of his wife, but that he was chargeable with interest after the distributive share of the respondent was properly demanded; that the claim of $1000, for moneys received from

Sherwood v. Wooster. .

the intestate, in 1831, was not established ; and that all the advances or gifts, made by the decedent to his daughter, must be collated.    The surrogate made a decree accordingly, declaring the respondent's share of the estate, in the hands of the administrator, to be $3687,81 ; which sum, together with the further sum of $154,24, allowed to the respondent for the costs of the proceedings before the surrogate, subsequent to the establishment of his identity by proof, the administrator was directed to pay to the respondent, Curtis Wooster, within thirty days from the time of entering such decree, on the 12th of June, 1841.    From this decree, and every part thereof, the administrator appealed to the chancellor.

*James Clapp*, for the appellant.

*H. R. Mygatt*, for the respondent.

THE CHANCELLOR.  The proofs before the surrogate established the identity of the respondent, as the son of the intestate, Isaac Wooster, beyond all doubt.  The testimony of Dr. White, of Hudson, who performed the surgical operation upon him when he was a boy, and of Mr. Moseley, to whom he was apprenticed for three years, is of the most satisfactory and conclusive character.

I think the surrogate was right also in deciding that the proceedings in the probate court, of the parish of East Baton Rouge, could not affect the right of the respondent, to claim his share of the estate or succession of his deceased father, according to the laws of Louisiana.  To understand the nature and effect of the proceedings in the parish court, it will be necessary to refer to the principles of the civil law, as it exists in Louisiana, in relation to the estate of a deceased person ; called in the language of the civilians, the succession.  But, in deciding this case, it is only necessary to refer to those principles in reference to intestate estates.  By the law of Louisiana, all the legitimate children of the intestate inherit equally, without distinction of sex or primogeniture, by heads, where they are of the same degree, and inherit in their own rights, and by roots where all, or any part of

them, inherit by representation; subject to collation where any advancement or donation has been made to any of them, by the intestate. (*Civ. Code of Louis. Art.* 898, 1306.) But the heirs of the intestate do not, as with us, obtain the possession of the personal estate of the intestate through an administrator, where they accept the succession unconditionally; or, in the language of the civil law, without benefit of inventory. For the succession, in such a case, is acquired by the lawful heirs, who are called by law to the inheritance immediately upon the death of the intestate; and the right to the possession of the property, which the decedent had, continues in the persons of the heirs as if there had been no interruption, and independent of the fact of their actual possession. The effect of this right, among other things, is to authorize such heirs to institute suits, in their own names, for the property of the intestate, or for debts due to him; and to continue suits commenced by him in his lifetime. It is true the rights of the heirs are in suspense, until they decide whether they will accept the succession or will reject it, or will accept it with the benefit of inventory. But when they do accept it unconditionally, they are considered as having succeeded to the decedent from the moment of his death; not only as to the part of the succession belonging to them in their own right as heirs, but also as to the part thereof which accrues to them by the renunciation of the succession by some of their coheirs. (*Idem, Art.* 934 *to* 942.) And where all the known heirs accept the succession without benefit of inventory, or a part of them accept, and the others renounce the succession absolutely, each heir who has thus accepted, may sue in his own name for his share of the property, or of an obligation which is susceptible of division; and may be sued by the creditors of the succession in the courts of ordinary jurisdiction, for his rateable proportion of each debt due from the intestate. (*Idem, Art.* 1376, 2107. *Code of Pr. Art.* 113, 120, 996. *Saunders* v. *Taylor,* 18 *Mart. Rep.* 522.)

Again; by the laws of Louisiana, where the succession opens in favor of a person who was once in esse, but whose continued existence is not known, the inheritance devolves exclusively on

those who would have a joint right with him, to the estate ; or on those upon whom the inheritance would have devolved if such person was not in existence when the succession opened, by the death of the testator or intestate. But this does not affect the right of such absentee to claim his share of the inheritance ; his right to which can only be barred by the lapse of time which is established for prescription in such cases. (*Civ. Code of Louis. Art.* 78, 79. *Dupre* v. *Reggio,* 6 *Louis. Rep.* 653.) The Code of Practice of Louisiana, which, perhaps, is not embraced in the stipulation in this case, gave to the appellant the right to sue for and recover, in his own name, in the courts of that state, the debt due to the estate of his father in law, whose succession his wife was supposed to have inherited, and to which succession she had been recognized as sole heir. (*Code of Pr.* 107.) The debts recovered by him, in the state of Louisiana, have therefore in law, as well as in fact, come to the hands of the appellant, and not to the hands of his wife. It may also be proper to state, in this connection, that by the law of Louisiana the heir who accepts the succession simply, without claiming the benefit of an inventory, does not give any security for the administration of the estate, or for the payment of debts, &c. unless he is required to do so by a majority in amount of the creditors of the succession, either present or represented, in the parish where such succession opened. But, by such unconditional acceptance, he renders himself personally liable for the debts of the decedent ; and he may be sued in the ordinary tribunals for the recovery thereof, out of his own property. And he is entitled to have the effects of the succession immediately delivered to him, upon his signifying such acceptance to the probate court. (*Civ. Code of Louis.* 1005, 1049. *Code of Pr.* 996.) Where the heirs of the decedent are absentees, and are not represented by their attorneys at the place where the succession opens, the estate is to be placed under the care of a curator, appointed by the probate court. And if a part of the heirs are absentees, their respective shares of the succession are, in like manner, to be placed under the care of a curator. But if the absent heirs present themselves within the time limited by

law for that purpose, and accept the succession, or send their powers of attorney to claim it, and cause themselves to be recognized as such heirs, the duties of the curators cease. And the heirs, in such case, are to be put into possession, with all the rights which they would have had if they had appeared and claimed the succession before the appointment of such curator; except that the administration of the curator, so far as it had been rightfully proceeded in before the appearance of the heirs, is valid and binding upon them. (*Civ. Code of Louis. Art.* 1105, 1180, 1181. *Idem, Art.* 50.)

In the case under consideration, the appellant's father in law left no heir at the place where he died, and where his succession opened according to the law of his domicil. A curator for the absent heirs of the vacant succession was therefore appointed. And I am satisfied it was done in due form; although the appellant may not have intended to give in evidence the code of practice, to show the jurisdiction of the parish judge in the case. But I have looked into that code of practice, as I supposed the stipulation between the parties was intended to embrace that part of the code of Louisiana, as well as the civil code. By a reference to the code of practice, I find that the parish judge is ex officio judge of the court of probate of the parish for which he is appointed. And such probate courts have exclusive jurisdiction, among other things, to appoint curators to vacant estates and absent heirs; to make the inventories and sales of the property of successions, which are administered by curators or testamentary executors, or in which the heir prays for the benefit of inventory; to decide on claims, for money, which are brought against successions administered by curators, testamentary executors, or administrators of successions to establish the order of privileges and the mode of payment; and to ordain and regulate all partitions of successions in which minors, or interdicted or absent persons are interested, or even those which are made by authority of law, between persons of lawful age and *residing in the state*, when such persons cannot agree upon the partition and the mode of making it. (*Code of Pr. Art.* 924, §§ 4, 5, 13, 14.) By another provision of this code, when the heirs or other

persons, entitled to successions which are administered by curators appointed by a judge, or by testamentary executors, shall present themselves or send their powers, to reclaim such successions, within the year allowed to the curator to administer, the judge of the probate court is to pronounce on the claim in a summary manner.   And if he discovers that the petitioners are entitled to the succession, he is to put them in possession of it; and is to direct the curator or executor to account.   The probate court, therefore, was the proper tribunal to receive the claim of the appellant, in right of his wife, to be admitted as heir to the succession, and to supersede the curator who had been appointed while the succession was vacant.   But there is nothing in the civil code or in the code of practice, which I have been able to discover, that makes the decision of the probate court, recognizing the person claiming in such a case as the sole heir, conclusive upon the rights of other persons who were not in fact heard before such court.   And the decision of the supreme court of that state, in the case of *Benoit* v. *Benoit's Heirs,* (8 *Louis. Rep.* 231,) appears to be an authority for a contrary conclusion.   Making the decision of the probate court conclusive upon the respondent in this case, would also be in direct conflict with the articles of the civil code which devolved the inheritance exclusively upon the only heir whose continued existence was known, but subject to the right of the absentee, whose existence was then unknown, to claim his share of the inheritance in case he should subsequently appear.   The 80th article of the civil code, was not intended to give the person put in possession of the inheritance, the right to the proceeds of such inheritance absolutely, even when received in good faith and without any knowledge of the continued existence of the absentee; but only to give the person thus put in possession the right to retain the proceeds of the inheritance, received in good faith, until such absentee appears.

Here, by the discharge of the curator, and the delivery of the succession to the appellant as sole heir, in right of his wife, without benefit of inventory, and by the removal of the whole of the effects of the succession beyond the jurisdiction of the state, the

probate court lost all jurisdiction, if it ever had any, to compel the partition and division of the succession, between the rightful heirs, upon the re-appearance of the one whose existence was not known at the time such curator was discharged. And the appellant's counsel is under a mistake, in supposing that the discharge of the curator was in the nature of a decree for the distribution of the estate, by an ordinary administrator here, upon the final settlement of his accounts, after the administration of the estate has terminated. But the appellant's rights in the property are the same, and no greater, than if the curator had never been appointed, and the appellant and his wife had appeared, before the probate court, and had claimed and accepted the succession without benefit of inventory, in the first instance.

The right of the respondent was not barred by prescription; as there never was a time, after the appellant received the portion of this estate which belonged to the respondent, in which any suit could have been instituted by the latter, for the recovery thereof, in any of the courts of Louisiana. Nor could the possession of the property be said to have been obtained in good faith, in reference to the laws of Louisiana. For if the fact that the intestate once had a son, who was not known to be dead, had not been concealed, provisional possession only as to his share of the succession would have been decreed; and upon giving security therefor. (See Civ. Code, art. 58, 66.) The laws of that state also recognize the general rule, that the prescription of actions is to be governed by the laws of the place where they are brought. And the appellant having brought the funds of the succession into this state, and inventoried them as a part of the personal estate of the intestate in his hands, as administrator here, it was a renunciation of the benefit of the prescription, if it ever existed in Louisiana. And he may therefore be compelled to distribute the property, in his possession as such administrator here, according to the rights of the heirs of the decedent therein.

The inventory made here is not absolutely conclusive evidence that the property, specified therein as having come to the hands of the administrator in money, was in fact property of the

estate; for which he was accountable as administrator. But as there was no .doubt of the right of the respondent to the money, legally as well as equitably, I think the surrogate was right in compelling the administrator to account for the fund received by him from Louisiana, while he was the rightful administrator here; as well as that part of the fund which he collected from debtors residing in this state.

The amount of $2068, for the check of $500 and the Remsen rum and sugar, and the amount received of Booth, appear to have been properly collated, or brought into hotchpot, by the surrogate, in ascertaining the share of the estate to which the respondent was entitled by the law of his father's domicil. By that law, collation must take place as to all advances made to one of the children, by way of gifts, or marriage portions, in the nature of a dowry, or to establish such child in business, &c. The articles of the code which declare that marriage presents are not subject to collation, nor things given by a father or mother or other ascendant, by their own hands, to one of the children for his pleasure or other use, (*Civil Code of Lou. art.* 1322, 1323,) only relate to such inconsiderable presents as parents are in the habit of giving to their children from time to time; or as mere marriage presents, and without any intention of making advancements to them as provisions towards their establishment or support in life. But a gift from a parent to his child, which gift is intended as a marriage portion as contradistinguished from a mere marriage present, is subject to collation. (1 *Dom. Book* 2, § 3, *art.* 7, *Partida* 6, *tit.* 15, *L.* 3.) Indeed the rule of the civil law is substantially the same as ours on this subject; except that, by the civil law, the parent is not permitted to exclude from collation, even by an express declaration of his intention on the subject, advances which have been made beyond the portions of his estate which he would be at liberty to dispose of by will. And collation is due of every gift. of a parent, to a child, as a portion or an advancement, unless the donor has in terms exempted it from such collation. (*Civil Code of Lou. art.* 1308.)

There is no evidence that the Delafield debt was a gift to the

appellant. And it was a sum of money due to the intestate, at the time of his death, which the appellant received in his character of administrator. He was therefore properly charged with it, as a part of the assets in his hands to be administered. Even if the appellant's statement of the contents of the decedent's letter could be considered as evidence in his own favor, it did not prove that the money, which by such letter he was directed to receive from the Delafields, was intended as a gift. But the decedent probably intended the appellant should receive the money as his agent; or perhaps as a loan until he should call for it.

The appellant was also properly charged with interest from the time of the demand of the respondent's distributive share of the estate. After that, he continued to hold the money in his own wrong ; and he could not, in equity, be permitted to deprive the respondent of the interest, while he was keeping him out of his share of the estate by a protracted litigation. Indeed, by the Louisiana civil code, the heir who is put into provisional possession, of the property of a person whose continued existence is not known, is bound to account for a portion of the interest, of the fund, which accrues before such absentee appears to demand the same. (*Art.* 69.) The appellant was also properly charged with that portion of the costs of the litigation to which the respondent was subjected, after he had furnished such evidence of his identity as ought to have been satisfactory.

The sentence and decree appealed from must therefore be affirmed, with costs. And the appellant must also pay to the respondent the interest, upon the amount of the decree, from the 12th of July, 1841, the time fixed by the surrogate for the payment of such decree ; which interest is awarded to him as his damages for the delay and vexation caused by this appeal.