CROSLEY v. CALHOON ET AL.

1. **Administrator**: ORDER OF PROBATE COURT: ESTOPPEL. An order of discharge of an administrator does not amount to an adjudication that an heir of the intestate, whom the administrator reported that he was unable to find, is in fact dead, nor will it estop such heir or his creditors from claiming his distributive share of the estate.

2. ————: EVIDENCE: ADMISSIBILITY. An authenticated copy of a confession of judgment in another State by the heir was *held* to be admissible in an action to recover his share from the other heirs, among whom the estate had been distributed.

*Appeal from Page Circuit Court.*

FRIDAY, APRIL 6.

ON the 17th day of April, 1875, the plaintiff commenced an action against James Calhoon upon a judgment recovered in the District Court of California, against said James Calhoon, for the sum of six hundred and seventy-five dollars, and interest at the rate of ten per cent, and ten dollars costs, all payable in gold coin of the United States. The petition alleged the non-residence of the defendant, and asked a writ of attachment which was served by garnishing John, Alexander and David Calhoon. The garnishees answered that they were not indebted to the defendant in the principal suit, and that they had no property of any kind in their possession or under their control belonging to him. The plaintiff controverted the answers of the garnishees. The issue joined was tried by the court, and judgment was rendered against each of the garnishees for the sum of $302.77 and costs. The garnishees appeal. The material facts are stated in the opinion.

*Wm. McPherrin*, for appellants.

*N. B. Moore* and *Barcroft, Given & Drabelle*, for appellee.

DAY, CH. J.—On the 9th day of December, 1870, James Calhoon confessed a judgment in the District Court of Cali-

fornia, for Sacramento county, in favor of plaintiff for the sum of $675, interest and costs. The evidence clearly establishes that James Calhoon, who confessed this judgment, is a son of George Calhoon, and brother of the garnishees. George Calhoon departed this life on the 14th day of December, 1872, intestate, and on the 7th day of January, 1872, John Calhoon, one of the garnishees, was duly appointed administrator of the estate. On the 20th day of April, 1873, the administrator filed a report, in which the following statement occurs: "He further represents that the children of the decedent are Eliza Calhoon, now intermarried with John Coffey in Ohio, David Calhoon, Alexander Calhoon and John Calhoon, living in Page county, Iowa, and James Calhoon who is supposed to be dead without issue for the following reasons, viz: that about twenty-three years ago he left his father's home, in Ohio, after receiving advancements, and went to the State of California, since which time the friends have had no word from him, excepting at one time, and that was more than seven years ago. The administrator has made diligent inquiry since his appointment to find some tidings concerning the said James, but without avail."

On the 5th day of June, 1874, the administrator made his final report. In this report he shows that he had paid to the children and heirs of the deceased the following sums: to David, $500; to Eliza, $1,739.05; to Alexander, $1,915; to himself, $975, making to each one, in connection with advancements received from their father in his lifetime, the sum of $3,015. This report renews the suggestion as to the absence and supposed death of James, states that there is on hand for distribution the sum of $1,730.47, asks that the administrator be allowed to distribute this sum among the four heirs known to be living, and that, upon the filing of the receipt of each one for the one-fourth part thereof, he be discharged from further trusts and liabilities. On the 29th day of June the administrator filed the receipts of David and Alexander Calhoon, and of himself, for the sum of $432.65, in full of their respective balances of the distributive share of said estate. The administrator gave due notice by publication that at the

June Term, 1874, of the Page County Circuit Court, he would submit his final report and ask to be discharged. At said term the Circuit Court made the following order: "The final report of the administrator, John Calhoon, is now examined and approved, and it appearing to the court that said administrator has made full settlement of said estate, paid all claims, and made distribution as provided by law, he is, therefore, discharged."

I. It is claimed, by appellants, that this order of the court amounts to an adjudication that James Calhoon was dead at the date of the decease of his father, and that it is binding upon James Calhoon and his creditors as *res adjudicata*. The probate jurisdiction of the Circuit Court is conferred by section 2312 of the Code, which is as follows: "The Circuit Court of each county shall have original and exclusive jurisdiction of the probate of wills, and the appointment of such executors, administrators, or trustees as may be required to carry the same into effect; of the settlement of the estates of deceased persons, and of the persons and estates of minors, insane persons, and others requiring guardianship, including applications for the sale of real property belonging to any such estate, except as prescribed in chapters one and three, of title, fifteen.

1. ADMINISTRATOR: order of probate court: estoppel.

. The appellee insists that neither in this section nor elsewhere is any jurisdiction conferred upon the probate court to determine who are entitled to distributive portions of an estate; citing *Granger v. Bassett*, 98 Mass., 462; *McLaughlin v. McLaughlin*, 4 Ohio St., 508; *Sherwood v. Wooster*, 11 Paige, 449, and other cases.

Without determining whether or not, in any event, the Circuit Court as a court of probate has jurisdiction to determine who are heirs of an estate and entitled to distribution, we are clearly of opinion that the order made in this case does not estop James Calhoon, nor his creditors, from insisting that he was, at the time of the intestate's death, an heir and entitled to a share of the estate. The order was made simply upon an application of the administrator, for the approval of his report, and his discharge from further trust and liability.

No notice of the application was given to James Calhoon, for the whole proceeding was conducted upon the theory that he was dead, without issue.

The jurisdiction of the court, if any such it has, was not invoked for the purpose of determining who were, or were not, heirs of the decedent. No such question was submitted to the court for determination, and it cannot be claimed that any such question was determined. The most that can be claimed for the order is, that, if the administrator has acted in good faith, without fraud or concealment, he is exonerated from further liability to the heirs. The heirs, who are recognized as such in the administrator's report, received the sums paid to them provisionally. If other heirs appear and establish their claim to a distributive share the heirs who have received the whole estate must account for the sums received above their proper share. The judgment of the court in this case recognizes the binding effect of the order discharging John Calhoon, and holds him equally liable with the other garnishees, for enough of the share of James Calhoon to satisfy the plaintiff's judgment. The court below gave to the order of discharge all the effect to which it is entitled.

II. The plaintiff introduced an authenticated copy of the confession of judgment of James Calhoon in favor of plaintiff, dated December 9th, 1870. The defendants objected to the introduction of this evidence and assign the admission of it as error. It is claimed that it cannot be received as evidence against the defendants that James Calhoon was alive at the time. If James Calhoon had written a letter of that date, and the handwriting had been fully identified, it would be competent evidence that he was alive on that day. The execution of the confession is fully proved, and that it is competent evidence we entertain no doubt. But, even if it were not competent the admission of it is error without prejudice, for it is fully proved by independent testimony that James Calhoon was alive on the day this confession purports to have been made.

2. ——: evidence: admissibility.

III. It is claimed that there is no proof that James Calhoon was alive when his father died. The answer to this is

that there is no proof that he was then dead. He was alive on the 9th day of December, 1870, two years before the death of his father. There is no legal presumption that he died in the mean time. The record discloses no error.

AFFIRMED.