[ Filed May 1, 1890. ]

# H. C. LEWIS, APPELLANT, v. J. C. BIRDSEY AND W. G. COOPER, RESPONDENTS.

REPLEVIN—WHAT TITLE SUFFICIENT TO SUSTAIN IT.—In an action to recover the possession of personal property, the plaintiff ordinarily must show that he is the owner of the property, or is lawfully entitled to the possession of it by virtue of a special property therein. The ownership, however, requisite to maintain such an action need not be absolute; a right to the possession and dominion over it for the time is all that is essential.

REPLEVIN—POSSESSION—EFFECT OF—TAKING BY THIRD PERSON.—Hence where one person is in possession of personal property exercising dominion over it, and another takes and carries it away without his consent, the former may maintain an action against the latter to recover the possession of the property although in fact it belongs to a third person, unless the latter can justify his taking of the property by showing such a privity existing between him and the owner as would entitle him to represent the owner's interest in it.

ATTACHMENT—PERSONAL PROPERTY IN THE HANDS OF A THIRD PERSON.—A sheriff, in the execution of a writ of attachment, is not authorized to take personal property into his custody where it is in the possession of a third person; in such case he can only attach the property by leaving a certified copy of the writ, and a notice specifying the property attached, with the person having the possession of the same.

PERSONAL PROPERTY—SALE OF—CONCURRENT ACTS—ATTACHMENT—LEVY.—Where a plaintiff owned a band of cattle, a part of which he agreed to trade to one G. in consideration that G. would convey to him a half interest in a certain lot of land in the town of C. P., and would also assign to him certain policies of insurance upon the buildings situated on the lot, and the plaintiff took the cattle to be traded to C. P. and left them there to remain a certain length of time, when he would return and consummate the trade; and the plaintiff returned at the expiration of the time, but ascertaining that G. had not assigned to him the policies of insurance, as agreed, took the cattle and sent them back to the pasture where he was keeping the band from which he had taken them, and subsequently the sheriff, under a writ of attachment in an action wherein one C. was plaintiff and said G. was defendant, in attempting to attach the cattle so agreed to be traded as the property of G., seized and took into his custody against the protest of the plaintiff a number of cattle which he selected from the band without knowing whether or not they were the cattle agreed to be traded; *held*, that the attempted levy was a nullity; and that the plaintiff had such an ownership in the cattle, even if he had made a bill of sale of them to G. and the latter had conveyed to him the interest in the said lot, but had failed to assign to him the policies of insurance, as would entitle him to maintain an action against the sheriff to recover the possession of the cattle seized.

APPEAL from Jackson county: L. R. WEBSTER, judge.

The appellant commenced an action in the said circuit court against the respondent Birdsey to recover the possession of certain personal property, consisting of eight head of thoroughbred cattle, claimed to be of the value of $2,700. He alleged in his complaint that on the twenty-seventh day of September, 1889, and prior thereto, in the said county of Jackson, he was the owner and in the law-

ful possession of and entitled to the lawful possession of said cattle; that on the said twenty-third day of September, in said county, the said respondent, without the consent of appellant, wrongfully took and seized the possession of and then wrongfully detained the same. He also alleged a demand of the possession of the cattle prior to the commencement of the action, and a wrongful withholding on the part of said respondent to appellant's damage in the sum of $2,050, and also alleged certain facts as special damages amounting to $1,000.

The said respondent filed an answer denying that the appellant was the owner of or entitled to the possession of the cattle, also the alleged value of them. He denied the wrongful taking, seizure or detention of the cattle, also the wrongful withholding possession of them, and the damage claimed on account thereof. Said respondent for a further defense alleged that he was, during the times mentioned in the complaint, the sheriff of said county of Jackson; that on said twenty-third day of September, 1889, an action at law was pending in the said circuit court wherein W. G. Cooper was plaintiff and one Wm. Gates was defendant; that at said last-mentioned time a writ of attachment duly issued in said action directing the attachment of the property of said Gates, or enough thereof to satisfy $503, which said writ was thereafter delivered to the said respondent as such sheriff, and that by virtue thereof he levied upon and took into his possession the said cattle; that said action was still pending undetermined, and that under said writ and levy said respondent was retaining possession of them. Said respondent also alleged that he was informed and believed, and upon such information and belief alleged, that said Wm. Gates was and had been the owner of and seized and possessed of the said cattle. The said respondent also, as another defense, alleged certain matters as an estoppel against the appellant from claiming ownership of the cattle.

The appellant filed a reply to the new matter of defense set forth in said answer, denying the same.

Thereupon the respondent, said W. G. Cooper, filed a motion to be made a party defendant in the said action, which was granted by the said circuit court. Said Cooper then filed an answer to the said complaint, similar in terms to that filed by the said Birdsey, and the appellant filed a reply to the new matter contained therein denying the same.

The case was tried by jury, who returned a verdict in in favor of the respondents, upon which the judgment appealed from was entered

*P. P. Prim, R Williams* and *G. W Kahler,* for Appellant.

*H. K. Hanna* and *Francis Fitch,* for Respondents.

THAYER, C. J., delivered the opinion of the court

The issues in this case involve the right of the appellant to the possession of the cattle mentioned in the complaint as against the respondents    The latter claimed the right to the possession of the cattle under the attachment proceedings, referred to in the answer to the complaint. The grounds of error relied upon by the appellant consist entirely of exceptions taken to instructions given by the court to the jury, and to the refusal of the court to give certain instructions as requested by the appellant's counsel.

It appears from the bill of exceptions contained in the record, that the appellant gave evidence at the trial of the action showing that he was the owner of twenty-three head of full-blooded Galloway cattle; that he was keeping them in a Mr. Bybee's pasture in said county of Jackson; that he had been keeping them there four or five weeks prior to the time of the alleged taking by the respondent Birdsey mentioned in the complaint; that a short time before said taking, he took out from the pasture seven head of the twenty-three head of cattle and drove them over to Central Point and turned them over to Wm. Gates and Mr. Fenton to take in; that he gave Mr. Fenton charge of the cattle, and told him to keep them until he came in

Sunday morning; that this was on the fourteenth or fifteenth of September, 1889; that he took the seven head of cattle over to Central Point to trade with Mrs. Gates for an undivided half interest she owned in lot 11, block 11, town of Central Point; that he was to give her the cattle for her half interest in the lot, and she was to assign to him her interest in the insurance polices on the buildings situated thereon; that the cattle were not delivered to Mrs. Gates because he did not come back until Monday morning and she had left the Sunday evening before, and had not assigned to him the insurance policies; that he then took charge of the cattle and had them sent back to the pasture with the others; but on the following Monday Birdsey, as sheriff, took the eight head of cattle in controversy, which were a part of the said twenty-three head, under the attachment in favor of Cooper and against Wm. Gates.

It also appears from the bill of exceptions that when the said sheriff went to levy the attachment upon the cattle, the appellant notified him that they belonged to him—appellant—and forbade his taking them; and that the sheriff not being able to identify the said seven head taken over to Central Point, those which he intended to levy upon, he employed one Edward McDonald to go with him and pick them out; that they took out eight head, including a suckling calf, but did not know whether they were the same animals which had been taken to Central Point and driven back.

It further appears from the bill of exceptions that the respondent W. G. Cooper was called as a witness, who testified that he had had conversations with the appellant in regard to the cattle; that he asked him about the black cattle,—if he had not traded Gates some black cattle; that appellant said "yes." Witness asked where they were. Appellant said "out at Bybee's pasture." That he traded them for real estate; gave Gates a bill of sale of the cattle. Witness asked him why the cattle did not belong to Gates. Appellant said they *were* Gates'. Witness asked him why

they were not at Gates' now; that appellant said: "They agreed to assign over these fire insurance policies, and when I came in Monday morning I found they hadn't done it, and I took the cattle right straight back home."

The honorable judge of the court, in signing the said bill of exceptions, appended to it the following certificate: "The above bill of exceptions is hereby allowed; the evidence above set out is not all the evidence in the case, but there was other and additional evidence upon all the points mentioned in the evidence as here set out."

The instructions of the court to the jury are too voluminous to be considered *seriatim*, and I shall not attempt it; but shall content myself by referring to some rules of law which bear upon the questions involved. The case was a very simple one to determine. The appellant was clearly entitled to the possession of the cattle unless they belonged to Wm. Gates at the time they were taken by the respondents. If the appellant had agreed to sell the cattle to Mrs. Gates, or to Wm. Gates, for that matter, and the latter had not performed the conditions upon which the sale and delivery were agreed to be made, the vendee would not have been entitled to the possession of the cattle, nor the sheriff to take them under the attachment proceeding. Neither was the sheriff entitled to take the cattle from the appellant by virtue of the writ of attachment so long as the latter had them in his possession, claiming to be their owner. The case of *Spaulding* v. *Kennedy*, 6 Or. 208, is decisive upon that point. Nor was the appellant required to prove general ownership of the property, in order to entitle him to a recovery of the possession thereof. If he had a right to the possession of it as against the respondents it was sufficient.

In *Sprague & Carr, Admr.*, v. *Clark*, 41 Vt. 10, the supreme court of that State, in construing a statute upon the subject of replevin, use this language: "Under this statute, any person who is entitled to the possession of any goods, or chattels, may maintain replevin against any person who unlawfully takes or detains such goods or chattels from

him. To entitle him to the possession, it is not necessary that he should be the owner, or that he should be entitled to possession as against all others. It is sufficient if he is entitled to the possession as against the person who takes it from him. In such case, the taking of it from him is an unlawful taking. A person who is in the possession, claiming the property or an interest in it, or a legal right to the possession, may maintain replevin against any person taking the property from him, who cannot show a better right to it. The defendant in the action of replevin, can prevail only when it appears that he is entitled to a return of the property, and that can be only when it appears that his right is superior to that of the plaintiff. The question is to be determined according to the respective rights of the parties to the suit."

This decision, though made under a statute, is, I think, a fair exposition of the general rule of law upon the subject.

The supreme court of New York, in *Rogers* v. *Arnold,* 12 Wend. 31, by Nelson, J., says: "It has long been settled in this State that the possession of personal chattels by the plaintiff, and an actual wrongful taking by the defendant, are sufficient to support replevin, and that it may be brought where trespass *de bonis asportatis* will lie." Citing several of the earlier cases.

The Civil Code of this State does not provide when a person may maintain replevin; but it does provide that in an action to recover the possession of personal property, the plaintiff may claim an immediate delivery thereof, when he is the owner of the property, or is lawfully entitled to the possession of it by virtue of a special property therein; from which it may be inferred that at least such an interest in personal property will entitle the plaintiff to recover the possession of it in the action when it is wrongfully detained from him.

In *Johnson* v. *Carnley,* 10 N. Y. 570,[1] the court of appeals held that an actual possession of the property by the plaintiff, coupled with an equitable interest therein at the
(1) 61 Am. Dec. 762.

time of the seizure by the sheriff, was sufficient to maintain the action, and to entitle the plaintiff to a return of the property, although the general property and right of immediate possession be at the same time in a stranger, the defendant showing no privity between himself and such stranger. This I am inclined to believe is the true rule upon the subject.

The lawful possession of personal property is a sufficient title, in my opinion, to entitle the possessor to recover it against one who has taken it without right. This view is sustained by the language of Justice Nelson in *Rogers v. Arnold, supra,* at page 35, as follows: "When we speak of property in the plaintiff, or in the defendant in this action, it is material to understand what is meant by the term. From the language used in some of the books, it might be inferred that the question between the parties involved the *absolute ownership of it.* The cases already referred to showing under what circumstances this action will lie, negative this idea. Right to the possession and dominion of the goods and chattels for the time is all that is essential. This is the view which this court had of the question at an early day (1 John's R. 380.) It is conceded by the learned judge who delivered the opinion in that case that an interest of the plaintiff in the property which would have sustained trespass or replevin would have constituted a good replication to the plea of property in strangers."

It would be a remarkable doctrine, indeed, if one person could invade the possessions of another, take and carry away without authority goods and chattels he was claiming and exercising dominion over, and defeat his recovering them back by a plea that some stranger owned them. The respondents in this case could gain no standing in court, to question the appellant's ownership of the cattle without first showing that Wm. Gates owned them and that the writ of attachment was duly levied upon them. A defendant in such a case, in order to justify the taking of property claimed by the plaintiff, must show not only that it belonged to a third person, but that there was such

a privity between him and the third person as entitled him to represent the latter in the ownership of the property  Nor does the evidence in the case, as shown by the bill of exceptions, estop the appellant from claiming the cattle  If he told the respondent Cooper everything testified to by the latter; and even more, if he had told him that he had sold the cattle to Gates in consideration of the half interest in the lot and the assignment of the policies of insurance, that he had executed a bill of sale of the cattle and received a deed for the property, but that the policies of insurance had not been delivered to him and he refused to deliver the cattle until they were, it would not have constituted an estoppel.

The appellant had an undoubted right, as before suggested, to hold the cattle until the agreement upon the part of the Gates family was fully performed.

A party cannot be compelled to deliver property upon a sale thereof, when delivery and payment are to be simultaneous, until the vendee has fully performed the terms of the agreement on his part; until then, the vendor has a lien upon the property, amounting to a special property in it and is entitled to hold it as against every one.

The theory upon which this case was tried in the circuit court, as indicated by the instructions given to the jury, and the refusal of the court to give instructions requested by appellant's counsel, which were excepted to, is clearly in conflict with the views herein expressed.

The judgment appealed from will, therefore, be reversed and the case remanded to the said circuit court for a new trial in accordance with the principles of the foregoing opinion