Decided 20 November, 1899.

## SIMONDS *v.* WRIGHTMAN.

[58 Pac. 1100.]

1. CONSTRUCTION OF CONTRACT.—A contract made by the acceptance of the terms of a letter, wherein the writer proposes to ship hops to another, obtained by the former from the growers, and to draw sight drafts therefor on the latter, and states that his "offers and your orders are good for 24 hours, unless otherwise stipulated," shows that the former is an independent dealer, and not the latter's agent to purchase hops.

2. INSTRUCTION—CONSTRUCTION OF WRITING.—Where the relation between parties is evidenced by an undisputed writing, the court should instruct the jury

as to the scope and effect of such relation—as, where an acknowledged letter shows that certain persons did not sustain toward each other the relation of principal and agent, it is the duty of the judge to peremptorily so state to the jury, and not to leave that question of fact for their consideration at all: *Long Creek Bldg. Assoc.* v. *State Ins. Co.* 29 Or. 569, applied.

3. Replevin—Variance—Ownership of Plaintiff's Grantor.— In a replevin action it is not permissible to deny that a certain person ever owned the articles in question and then prove title through that person—to do so would be a clear variance between the pleadings and proofs, and to the prejudice of the adversary: *Hill* v. *Mellon*, 3 Or. 542, cited.

4. Replevin—Pleading Date of Ownership.—A replevin complaint must show the ownership and right to possession of the chattels in question at the time of commencing the action: *Kimball* v. *Redfield*, 33 Or. 292, followed.

From Marion : George H. Burnett, Judge.

Action by Henry A. Simonds and another, as partners under the firm name of F. W. Simonds & Son, against Frank T. Wrightman, sheriff.   Judgment for plaintiffs, and defendant appeals.                  Reversed.

For appellant there was a brief over the names of *Wm. M. Kaiser* and *Woodson T. Slater*.

For respondents there was a brief over the name of *Holmes & Kellogg*.

Mr. Justice Moore delivered the opinion of the court.

This is an action to recover the possession of one hundred and seventy-three bales of hops, or their value in case possession thereof cannot be had.   The answer, after denying the material allegations of the complaint, avers that, an action having been commenced in the Circuit Court of Marion County by Kola Neis against Phil Neis, to recover the sum of $2,134.70 and interest and attorney's fees, a writ of attachment was duly issued therein, in pursuance of which the defendant, as sheriff of said county, seized said hops as the property of the defendant in said action.   The reply having denied that Phil Neis, on that or on any other day, or at all, was the owner or in possession of said hops, a trial was had, resulting in a judgment for plaintiffs, and defendant appeals.

1. It is contended by defendant's counsel that the court erred in permitting plaintiffs, over their objection and exception, to introduce evidence tending to controvert their reply, and in refusing to give an instruction asked by defendant to the effect that, under the pleadings, plaintiffs could not claim title to the hops by direct purchase from Phil Neis & Company. The bill of exceptions shows that Phil Neis was engaged in the hop business under the name of Phil Neis & Company, and, having secured samples of hops from various growers, he numbered and sent them to plaintiffs, who were hop merchants doing business at No. 18 South William Street, New York; that with such samples was one numbered 24, representing hops grown by G. Storts and Wong Tong, near Townsend, a station in Marion County on a branch of the Southern Pacific Railroad; that on October 19, 1896, Phil Neis sent to plaintiffs from Salem a cipher telegram, the translation of which, as far as applicable to the case at bar, reads as follows: "We offer No. 24 at $9\frac{5}{8}$ cents, New York, for immediate answer." On the following day he received from them a message, the translation of which is as follows: "Sample No. 24, we accept your offer, $9\frac{5}{8}$ cents." Neis immediately telephoned his agent at Woodburn to buy said hops, consisting of one hundred and seventy-three bales, at $7\frac{1}{2}$ cents per pound, which the latter did, paying on account thereof the sum of $1, and agreeing to pay the remainder of the purchase price on October 24, 1896, when the hops were to be weighed and received; that on the day so agreed upon the hops were inspected, and two days thereafter, Storts and Wong Tong having placed all but seventeen bales in cars, Neis paid them the remainder of the purchase price from his own funds, and left them a receipt, to be signed by an agent of the railroad company, to the effect that "Phil Neis & Co., consignor, shipped said hops to Phil Neis & Co.,

consignees, New York City.   Notify F. W. Simonds &
Son."   Neis also, on the same day, mailed to plaintiffs
the following invoice :

SALEM, OREGON, Oct. 26, 1896.
Messrs. F. W. Simonds & Son, Bought of Phil Neis &
Co., Hop Merchants.

| | | |
|---|---|---|
| 173 bales Oregon hops, identical lot, sample No. 24, 31,873 lbs. net, @ 9⅝ c._____ | $3,067 | 77 |
| Less freight, 33,084 lbs. gross, @ 1½ c._____ | 496 | 26 |
| | $2,571 | 51 |

The defendant, as sheriff of said county, on October
28, 1896, attached said hops as the property of Phil Neis,
who thereafter made an affidavit and executed an under-
taking, thereby securing possession of the attached prop-
erty, which he sold, and retained the proceeds.   It also
appears that plaintiffs have never received the shipping
receipt, nor paid any sum whatever on account of the
purchase of the hops.

The method of doing business which existed between
plaintiffs and Phil Neis is shown by the following letter :

"PHIL NEIS & CO.,
HOP MERCHANTS.
SEATTLE, WASH., Sept. 13, 1893.
Mr. F. W. Simonds & Son,
18 South William Street, N. Y.

DEAR SIRS :  Since our last respects of the 11th inst.,
we received your favor of the 5th inst.   Contents noted,
with thanks.   We could have offered you 200 bales of
Oregon hops at less than figures 22 cts., delivered there,
equal and similar to sample No. 1, which we mailed you
to-day, but we did not consider them the right quality
for the English market.   We know exactly what quality
you desire.   All our offers and our orders will be deliv-
ered New York, but only cost and freight, as the railroad
company guaranties delivery of hops.   No one insures
shipping from the coast points east.   Nevertheless, if you

wish insurance, we will insure.    Washington hops are
shipped by either Northern Pacific R. R. or Great North-
ern via St. Paul, and go through within fifteen or sixteen
days from date of shipments.    We always ship Oregon
hops to New York via Southern Pacific and Sunset Route
to New Orleans, and from New Orleans via steamer to New
York.    The Sunset Route carries the risk of marine insur-
ance between New Orleans and New York.    Shipments
also go through on this route within 15 or 16 days from
coast to New York.    In shipping to you, we will do the
same as with all our customers—draw sight drafts, ship-
ping documents attached.    We draw one sample from
every ten bales, representing the average quality of ship-
ment, which we will mail to you.    Our offers and your
orders are good for 24 hours, unless otherwise stipulated.
We guaranty the quality of shipments, either by samples
or as offered by us.    In case of dispute, the question to be
settled by arbitration.    Nothing will be left undone on our
part to give you full satisfaction, and we hope that we will
be able to do a large business with your firm.    Will mail
you samples as soon as hops are baled.    Freight from here
to New York is $2.20 per 100 lbs.

>            Yours, faithfully,

>                    Phil Neis & Co.''

This letter and the telegrams mentioned evidence the
agreement entered into between plaintiffs and Phil Neis
& Company, with reference to the hops in question.    The
letter states that, in shipping hops to plaintiffs, Phil Neis
& Company would pursue the course which they had
adopted in dealing with all other customers, viz., draw
sight drafts, and attach them to the shipping documents.
The language of the letter, ''Our offers and your orders
are good for 24 hours, unless otherwise stipulated,'' shows
that Phil Neis & Company were not plaintiffs' agents, but
independent dealers, who purchased hops from the grow-
ers on their own account, whenever they could find buy-
ers therefor in the Eastern markets.

2.    The agreement for the sale of the hops and the

method of dealing which existed between plaintiffs and Phil Neis & Company being evidenced by writings about which there is no controversy, it was the duty of the court to say to the jury, as a matter of law, that Phil Neis & Company were not the agents of plaintiffs in the purchase of the hops in controversy : Mechem, Ag. § 104 ; 1 Am. & Eng. Enc. Law (2 ed.), 967 ; *Long Creek Bldg. Assoc.* v. *State Ins. Co.* 29 Or. 569 (46 Pac. 366); *London Sav. Fund Soc.* v. *Hagerstown Sav. Bank*, 36 Pa. St. 498 (78 Am. Dec. 390).

3.    This brings us to a consideration of the question whether plaintiffs, after having denied in the reply that Phil Neis & Company were ever the owners of the hops, could be permitted to controvert such averment by introducing evidence, over defendant's objection and exception, tending to show that they purchased them from Phil Neis & Company, whom they alleged were never the owners thereof. It is a primary rule that evidence, to be admissible, must correspond with the allegations, and be confined to the point in issue : Hill's Ann. Laws, § 704 ; 1 Greenleaf, Ev. § 51. If the variance between the allegation in a pleading and the proof have actually misled the adverse party, to his prejudice in maintaining his action or defense upon the merits, such variance is material, and error can be predicated thereon if objection be made at the proper time, distinctly specifying the grounds thereof : Hill's Ann. Laws, § 96 ; *Hill* v. *Mellon*, 3 Or. 542 ; *Davidson* v. *Oregon & Cal. R. R. Co.* 11 Or. 136 (1 Pac. 705). The bill of exceptions shows that defendant objected to the introduction of the evidence complained of because it "contradicted the allegations and admissions of plaintiffs in their pleadings," and, such objection having been properly made, the court erred in not giving the instruction requested by defendant, and also in charging the jury as follows : "And the

plaintiff's may prove the title to these hops, either by
direct purchase from the original growers, through their
agent,—that is, the agent of the plaintiff's,—or they may
prove that they purchased them direct from Phil Neis &
Co." It must be admitted that, if plaintiffs thought the
facts warranted it, they had the right to adopt the theory
that Phil Neis & Company were their agents in the pur-
chase of these hops, and, under the maxim, "*Qui facit
per alium facit per se*,"* contend at the trial that the de-
livery of the hops by the growers to their agent imme-
diately vested the title in them. But, having adopted
such theory, they are precluded from changing it with-
out an order of the court permitting them to amend their
reply ; and if, upon the condition of the pleadings and
the evidence submitted, a motion for a judgment of non-
suit had been interposed, or if the court had been re-
quested to instruct the jury to find for the defendant,
error could undoubtedly have been predicated upon its
refusal. It is maintained by plaintiffs' counsel that, hav-
ing alleged in the complaint that their clients were the
owners and entitled to the immediate possession of the
hops at the time they were attached, it is immaterial
whether their title was derived from the growers or from
Neis. Issues are formed by the pleadings to inform par-
ties of the nature of the primary right alleged to be in-
volved, and to enable them to prepare for trial. The
denial in the reply advised defendant that plaintiffs ex-
pected to maintain their cause of action upon the theory
that Neis was their agent, and it must be inferred that
defendant, acting upon such advice, prepared to meet
that issue. If, at the trial, plaintiffs had changed their
theory by securing an amendment of their pleading so as
to allege a purchase from Neis, the defendant, by reason

---

*"Whatever act you by another do,
The law will hold that act was done by you." .

of the surprise, could have moved the court to postpone the trial, and, if a continuance were refused, might have assigned such action as error, and the question upon an appeal in such case would be as to whether the court had abused its discretion; but, until such contingency arose, the defendant's objection and exception to the introduction of the evidence, in consequence of the variance, and his request for the court to give the instruction alluded to, were sufficient to render the allegation of the reply material.

4.    Another question, which is not assigned as error in the notice of appeal, is the fact that the complaint was filed November 5, 1896, and it is alleged therein that on October 26, 1896, plaintiffs were the owners and entitled to the possession of the hops; that on the latter day defendant unlawfully took them from their possession; and that on November 2, 1896, plaintiffs demanded of defendant the possession thereof, notwithstanding which he unlawfully detains them.    It is not alleged in the complaint that plaintiffs were entitled to the possession of the hops at the time the action was commenced, and under a similar allegation it was held that the complaint must show a right to the immediate possession of the chattels (*Kimball* v. *Redfield*, 33 Or. 292, 54 Pac. 216); but whether such defense was aided by the verdict it is not necessary to determine, since permission can probably be secured in the lower court to amend the pleading in this respect, and also to strike out the denial that Phil Neis ever was the owner or in possession of the hops.    It follows that the judgment is reversed, and a new trial ordered.

REVERSED.