Argued 12 September; decided 8 October, 1900.

## BLOCH *v.* SAMMONS.

[55 Pac. 438, 62 Pac. 290.]

AMENDING BILL OF EXCEPTIONS AFTER APPEAL.

1. Where the bill of exceptions as filed in the supreme court is incomplete or incorrect, the proper practice is to secure a proper amendment by the trial court, and then file it as part of the record on appeal. This is preferable to remitting the transcript for correction: *State ex rel.* v. *Estes*, 34 Or. 196, followed.

ESTOPPEL—REPRESENTATION OF TITLE—FRAUD.

2. Where one, with full knowledge of all facts, voluntarily represents to an intending purchaser of real estate that he has no interest therein, intending that such representation shall be acted upon, and the purchaser buys in consequence thereof, such conduct will estop the person who made the statements from afterward asserting title in himself, though he may have been ignorant of his rights, and may not have intended any actual fraud. In such a case fraud will be inferred: *House* v. *Fowle*, 22 Or. 303, distinguised.

From Multnomah: ERASMUS D. SHATTUCK, Judge.

Action by Jacob Bloch against Sarah Sammons and Jos. Hubbell to recover possession of real property. Hubbell alone defended and finally obtained a judgment.

REVERSED.

Decided 19 December, 1898.

## ON MOTION TO REMIT THE TRANSCRIPT TO THE TRIAL COURT FOR CORRECTION.

*Mr. Lawrence A. McNary*, for the motion.

*Mr. Edw. Mendenhall, contra.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

1. This is a motion by respondent Hubbell to remit the transcript of the above cause to the court below for the purpose of having the bill of exceptions there corrected to conform with the facts as they occurred at the trial. The question involved is purely a matter of practice. In the case of *State ex rel.* v. *Estes*, 34 Or. 196 (52 Pac. 571), it was held that the bill of exceptions may be corrected in the court below, notwithstanding the cause was pending on appeal. In that case there was an amendment *nunc pro tunc* by the lower court, and thereupon the amended bill was filed here, and the question came up on motion to strike it from the record. This we refused to do, and approved the practice there adopted. We think it the better one, and therefore deny the present motion to remit the transcript.    MOTION OVERRULED.

Decided 8 October, 1900.

### ON THE MERITS.

For appellant there was a brief over the name of *Edw. & A. R. Mendenhall*, with an oral argument by *Mr. Edw. Mendenhall*.

For respondent there was a brief over the names of *Lawrence A. McNary* and *Fred L. Keenan*, with an oral argument by *Mr. McNary*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

This action was commenced in a justice's court to recover possession of certain real property in the City of Portland. The complaint alleges that the plaintiff is the owner, and entitled to the possession, of the property in controversy, and that defendant is in possession thereof, and unlawfully holds the same by force. The answer denies the allegations of the complaint, except defendant's possession, and for a further defense avers that he is the owner of an estate by curtesy in the premises described in the complaint, as the husband of Mary Hubbell, deceased, and that whatever estate, if any, the plaintiff has therein is as remainder-man. The reply puts in issue the affirmative allegations of the answer, and, for a further and separate defense thereto, alleges that the defendant was plaintiff's tenant, but, having failed to pay rent, the plaintiff, more than ten days previous to the commencement of the action, served upon him a written demand for possession of the premises; that plaintiff purchased the property in controversy at administratrix's sale made under an order of the County Court of Multnomah County in the matter of the estate of Mary Hubbell, deceased; that, while the property was being offered for sale at public auction, the defendant willfully stood by and represented to the plaintiff that he could safely buy the property, and, to induce him to bid thereon, represented that he had no interest of any kind therein, and that whoever purchased it would get a title in fee thereto free from all incumbrances; that the plaintiff, believing such representations and relying thereon, was induced to, and did, purchase the property at such sale for the sum of $630. The trial of the cause in the justice's court resulted in a judgment in favor of the plaintiff, from which defendant appealed to the circuit court, where a jury trial was had, without

objection, and a verdict returned in favor of the plaintiff. The defendant thereupon moved for judgment notwithstanding the verdict, upon the ground, among others, that the plea of estoppel set up in the plaintiff's reply is insufficient, in that it does not allege fraud on the part of defendant Hubbell, or facts from which fraud could be inferred, nor does it allege that he had knowledge of his title at the time he made the declaration in reference thereto. This motion was allowed, and a judgment entered in favor of the defendant, adjudging that he is the owner of a life estate in the premises described in the complaint, and plaintiff appeals to this court.

2. The only question discussed in defendant's brief, or to which we shall allude, relates to the sufficiency of the plea of estoppel set up in the reply. The point of the objection is that it is not alleged that the representations of the defendant were made with a fraudulent intent, or that he was apprised of the true state of his own title at the time he made them.

It is difficult to ascertain from the adjudged cases how far positive fraud must enter into the acts or declarations of the party sought to be estopped from asserting title to real estate. The authorities are practically agreed that fraud is an essential ingredient of such an estoppel, but disagree as to whether it must be in the positive intent of the party sought to be estopped, or may be inferred from the effect of the evidence he is attempting to set up. The cases upon the subject are numerous and not easily reconciled. They will be found referred to and commented upon in 3 Washburn, Real Prop. (5 ed.) 87; 2 Pomeroy, Eq. Jur. (2 ed.) §§ 807, 808. There seems, also, to be a distinction in this regard between estoppels implied from mere silence and from positive acts. In an early case (1830), Mr. Chief Justice Gibson stated the rule to be that silence will postpone only where it was a

fraud, and hence the fraudulent concealment of title would not be imputed to one who was ignorant that he had any title to conceal. But positive acts, for the consequences of which the doer is civilly liable without regard to the question of ignorance or knowledge, stand on a different ground. For these his title may be postponed, even without actual fraud, in accordance with an equitable principle of universal application that, where a loss must necessarily fall on one of two innocent persons, it shall be borne by him whose acts occasioned it : *Robinson* v. *Justice*, 2 Pen. & W. 19. This rule seems to have been followed in many instances (11 Am. & Eng. Enc. Law [2 ed.], 434 ; 2 Washburn, Real Prop. [5 ed.] 89 ; 2 Dembitz, Land Tit. § 138 ; *Chapman* v. *Chapman*, 59 Pa. St. 214 ; *Martin* v. *Maine Cent. R. R. Co.* 83 Me. 100, 21 Atl. 740; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221 ; *Trustees* v. *Smith*, 118 N. Y. 634, 23 N. E. 1002, 7 L. R. A. 755 ; *Beardsley* v. *Foot*, 14 Ohio St. 414, 84 Am. Dec. 405 ; *Cady* v. *Owen*, 34 Vt. 598 ; *Moore* v. *Brownfield*, 10 Wash. 439, 39 Pac. 113 ; *Rice* v. *Bunce*, 49 Mo. 231, 8 Am. Dec. 129), although there are well-considered cases holding the contrary doctrine (2 Pomeroy, Eq. Jur. [2 ed.] § 821 ; *Boggs* v. *Merced Mining Co.* 14 Cal. 279, 367 ; *Davis* v. *Davis*, 26 Cal. 23, 38, 85 Am. Dec. 157 ; *Brant* v. *Virginia Coal & Iron Co.* 93 U. S. 326, 23 L. Ed. 927).

It is not necessary at this time, however, to examine the decisions upon the subject in detail, or to indicate a preference for one view or the other. Whatever the rule may be, the doctrine seems well supported that if a party, with full knowledge of all the facts, voluntarily represents to another, who is about to purchase real estate, that he has no interest therein, intending such representation to be, and it is, acted upon, he cannot afterwards assert title in himself as against the purchaser, although

he may have been ignorant, as a matter of law, of his legal rights when he made the representation, and may have intended no positive fraud. In such case, fraud will be inferred. Knowledge of the true state of the title is necessarily imputed from knowledge of the facts, and, whether intended or not, the subsequent assertion of title would operate as a fraud upon the purchaser in the same manner as if the representation had been made with fraudulent purpose in the first instance. As a general rule, relief is never granted upon the ground of a mistake of law. In *Storrs* v. *Barker*, 6 Johns. Ch. *166 (10 Am. Dec. 316), a suit to enjoin the further prosecution of an action of ejectment, a wife devised her property to her husband, with the approbation and consent of the defendant, her father. The husband subsequently sold and conveyed the land to the plaintiff, who had been advised by the father to purchase, and was assured by him that he did not claim the land by inheritance, for his daughter had made a will. Mr. Chancellor KENT said that, if the case rested upon these facts alone, "it would fall within the rule of equity that where one having title acquiesces knowingly and freely in the disposition of his property, for a valuable consideration, by a person pretending to title, and having color of title, he shall be bound by that disposition of the property, and especially if he encouraged the parties to deal with each other in such sale and purchase. * * * But in this case the defendant endeavors to withdraw himself from the operation of the rule by the averment that he mistook the law of the land and did not know that the devise of a *feme covert* was void, or that his title was good as heir to his daughter until late in the year 1816. I am induced, from the proofs in the case, to believe in the truth of the averment, and the question then arises whether that ignorance of his own title will prevent the application of

the doctrine. The presumption is that every person is acquainted with his own rights, provided he has had reasonable opportunity to know them, and nothing can be more liable to abuse than to permit a person to reclaim his property in opposition to all the equitable circumstances which have been stated, upon the mere pretense that he was at the time ignorant of his title. Such an assertion is easily made, and difficult to contradict. It is rarely that a mistake in point of law, with full knowledge of all the facts, can afford ground for relief, or be considered as a sufficient indemnity against the injurious consequences of deception practiced upon mankind ; and if the person, as in this case, is not merely silent and passive, but gives explicit confirmation to the title of the party in possession, and encourages him to sell, and encourages the purchaser to buy, the case is greatly altered, and equity and policy equally dictate that he, and not the purchaser, ought to suffer. His ignorance of the law ought not to protect him from the operation of the rule of equity. He could easily have dispelled that ignorance, for he had the fact of the will of his daughter before his eyes ; and, if he may be allowed to plead his voluntary ignorance in destruction of equitable rights growing out of his own acts and assertions, the grossest imposition and the greatest fraud might be practiced with impunity.''

So, also, in *Favill* v. *Roberts*, 50 N. Y. 222, the executor of a will, with the knowledge and acquiescence of the heirs, applied to the court for authority to sell and convey real estate, and subsequently sold it to a party who had been assured by the heirs that he had authority to make such sale. The heirs afterwards set up title to the property on the ground that the will did not confer upon the executor the power to dispose of the real estate, and the court, making the order for the sale, had no jurisdic-

tion of the subject-matter. But they were held to be estopped by their conduct, the court saying : "The plaintiff made the purchase and parted with his money in good faith. If the appellants knew that the order was invalid, they were guilty of a gross fraud, which would be successful unless they are estopped from disputing the assurances given by them upon which the plaintiff acted in making the purchase and parting with his money. Under these circumstances, they are estopped. · * * * But suppose, what is more probable, that they were ignorant of the invalidity of the order of the court, and really believed that it conferred power upon Lewis to sell and convey their interest in the land, this will not aid the appellants. We have already seen that the plaintiff had the right to assume that they were acquainted with their own title, and with the extent of the authority of Lewis to dispose of their interest in the land, and to act upon such assumption." Again, in *Maple* v. *Kussart*, 53 Pa. St. 340 (91 Am. Dec. 214), a husband and wife were tenants by entirety, and, after the husband's death, the land so held was sold, and the widow, who, ignorant of her rights as survivor, had in good faith encouraged a purchaser to bid for and take a deed to it, was held estopped to set up a claim thereto. In *Longworth* v. *Aslin*, 106 Mo. 155 (17 S. W. 294), it was decided (quoting from the syllabus) that, "where one advises and encourages another to buy an adverse title to land, he will be estopped to deny the vendee's title, even though he was acting under a mistake of law as to the validity of his own title." So, also, in *Hill* v. *Epley*, 31 Pa. St. 331, it is said that, "if a person positively encourages another to purchase either land or a chattel, he cannot afterwards assert any title in himself to the thing purchased, and this though he may have been ignorant of his rights when he gave the encouragement ; for though, in the latter case, there

may have been no fraudulent intent, yet the assertion of his title would operate as a fraud, as much so as if there had been a fraudulent purpose. Besides, the equitable principle is that, when a loss must befall one of two innocent persons, that one must bear it through whose act it was occasioned."

These authorities are decisive of the case under consideration. At the time the defendant made the representations alleged he knew, or was chargeable with knowledge, of his estate in the land then being offered for sale. When he informed the plaintiff, an intending purchaser, that he had no interest therein, but that it belonged to the estate, and whoever purchased would get a title in fee, and the plaintiff acted upon such representations, and made the purchase, he estopped himself from thereafter denying the plaintiff's title, although he may have been ignorant, as a matter of law, of his own title, and may have intended no positive fraud. *House* v. *Fowle,* 22 Or. 303 (29 Pac. 890), is distinguishable from the case at bar in that the widow, who was sought to be estopped from asserting a claim of dower against a purchaser at an administrator's sale, did not represent to him that she had no claim or interest in the land.

As the case comes here on a motion for a judgment notwithstanding the verdict, we have no concern with the facts, and must assume that the allegations of the reply were supported by the testimony. And, since the pleading is sufficient, the judgment of the court below must be reversed and the cause remanded, with instructions to overrule the motion, and for such further proceedings as may be right and proper.          Reversed.