Argued 5 July, decided 31 July, 1905, rehearing denied.

## CASTO v. MURRAY.

81 Pac. 388, 883.

APPEAL — ORAL INSTRUCTIONS AS PART OF RECORD OF TRIAL COURT — BILL OF EXCEPTIONS — DIMINUTION OF RECORD.

1. Oral instructions to the jury are not a part of the record of the trial court, under B. & C. Comp. § 132, subd. 6, requiring the charge to the jury to be reduced to writing and filed with the clerk at the request of either party, so that unless such instructions are written out afterward and made a part of the bill of exceptions, they cannot reach the supreme court.

SUPPLYING DIMINISHED TRANSCRIPT — ORAL INSTRUCTIONS.

2. A diminished transcript cannot be supplied by matter not part of the records of the trial court, as, for example, by a copy of the oral instructions taken stenographically and extended, such writing not being part of the statutory record of the trial.

REPLEVIN — RIGHTS OF POSSESSOR.

3. Bare possession of personal property entitles the possessor to hold it against mere trespassers, even though the title may be in another.

MASTER AND SERVANT — EFFECT OF DEATH.

4. The relation of master and servant is ended by the death of the employer, unless there is a special agreement otherwise.

PLEADING — MATTERS OF INDUCEMENT ARE IMMATERIAL.

5. Matters of inducement and explanation, not constituting a part of the cause of action, are immaterial and may be stricken out on motion.

REPLEVIN — ALLEGING RIGHT OF POSSESSION.

6. In replevin it must appear by the complaint that plaintiff was entitled to the possession of the property named at the time the action was commenced.

IDEM — ALLEGATIONS WITHOUT CONCLUSIONS.

7. A complaint in claim and delivery, basing plaintiff's right of possession on a contract covering a definite period of time, before the expiration of which the action was commenced, and showing that at a date prior to the expiration of that period defendants unlawfully took possession of the property, discloses a right to the immediate possession of the property in plaintiff, without an express averment to that effect, and the striking out of such an averment is not error.

ADMINISTRATORS — APPOINTMENT — EFFECT — TITLE BY RELATION.

8. Under B. & C. Comp. § 1147, vesting title to the possession and control of property of a decedent in his personal representative until the completion of the administration, and section 5578, entitling the widow of an intestate who leaves no issue to the residue of his personal property after the payment of the debts and expenses of administration, a widow of an intestate decedent, who takes possession of personal property belonging to her deceased husband's estate prior to the appointment of an administrator, acquires by a subsequent appointment as administratrix a title to such personal property which relates back to her husband's death, and may be pleaded as a defense to an action of replevin brought for such property by the person from whom she took the same, provided the taking was lawful; but the title so acquired will not relate back, so as to validate the taking, if the same was originally unlawful and in violation of the rights of the person in possession thereof.

From Marion: GEORGE H. BURNETT, Judge.

This is a replevin action by Samuel Casto against Emma Murray and others, resulting in a judgment for defendants. After the transcript had been filed the respondents moved for permission to supplement the record, which was overruled, and upon final consideration the judgment was affirmed.          Motion Overruled: Affirmed.

Decided 20 March, 1905.

On Motion to Supplement the Record.

*Mr. John A. Carson* and *Mr. Anderson M. Cannon* for the motion.

*Mr. Woodson T. Slater, contra.*

Per Curiam. 1. This is a motion by respondents suggesting a dimunition of the record, and to have this court supplement the same with the instructions to the jury of the trial court. The instructions have not been sent up, and are therefore not a part of the record here. The declared purpose of thus having the record completed is to have it shown that, although the trial court overruled a demurrer to the first separate answer to the amended complaint, it in effect disregarded such answer by its instructions to the jury, and thereby cured the error, if any, in its ruling upon the demurrer; it being now insisted by the appellant that the trial court erred in that particular. The instructions were given orally and taken down in shorthand, but the notes were not extended and filed with the clerk until later, when they were certified to by the circuit judge as being full and correct, and this court is now asked to annex them to the record here. There is a bill of exceptions accompanying the record, but whether it is desired to have the instructions added to it, or simply to have the record supplemented thereby, is not entirely

clear. But in either view, we are of the opinion that the motion ought not to be allowed. If either party require it, the charge of the court must be given in writing, and when so given it must also be filed with the clerk (B. & C. Comp. § 132, subd. 6), and, being so filed, it becomes a part of the record in the case. Oral instructions apparently were not designed to be thus incorporated in the record. It is the office of the bill of exceptions to embody a statement of the events and holdings of the court during the progress of the trial and in the submission of the cause to the jury, and it is only by this method that a record of the trial is made up. All matters not otherwise required by law to be made a part of the files and record in the case are required thus to be certified, or else the appellate court cannot take cognizance of them: *Farrell* v. *Oregon Gold Co.*, 31 Or. 463, 473 (49 Pac. 876), and cases cited.

2. Hence it may readily be seen that the certified oral instructions with which it is sought to have the record now supplemented are not pertinent for that purpose, because not a part of the record of the trial court; and much less are they a part of the bill of exceptions, because not incorporated therein. It is the province of the trial court, in a proper case, to correct, and if necessary supplement, the bill of exceptions; and, when so corrected and supplemented, this court will require that it be sent up so that the cause may be fully and fairly presented for determination: *State ex rel.* v. *Estes*, 34 Or. 196, 204 (52 Pac. 571); *Bloch* v. *Sammons*, 37 Or. 600 (55 Pac. 438, 62 Pac. 290); *Nosler* v. *Coos Bay Nav. Co.*, 40 Or. 305, 308 (63 Pac. 1050). But, unless the matter is in some regular course incorporated in or made part of the record in the case, it is not entitled to be filed or considered here. The motion is therefore denied.        MOTION OVERRULED.

Decided 31 July, 1905.

ON THE MERITS.

Statement by MR. JUSTICE MOORE.

This is an action by Samuel Casto against Emma Murray, T. E. Strong and C. D. Crookham, to recover the possession of a horse. The complaint, so far as deemed material, is as follows:

"That on or about the 15th day of July, 1903, William Murray was the owner and in possession of one chestnut colored stallion, named Diablo, [and keeping him in the stud at the fair ground near Salem, in Marion County, Oregon; and at said date said Murray employed said plaintiff to care for and attend said stallion, and said plaintiff entered into the possession of said stallion, and thereafter, under said employment, gave him all necessary care and attention] until the death of the said William Murray, which occurred on or about the 21st day of August, 1903, at the City of Salem, Oregon; [and that thereafter said plaintiff continued in the possession of said stallion, and cared for him, and gave him all necessary attention in the stud l, until on or about the 26th day of August, 1903, when said defendant Emma Murray, widow of said William Murray, then deceased, and claiming to be, and who was, the sole heir at law of said decedent, and claiming to be, and who was, the sole owner of said stallion, made and entered into an agreement with said plaintiff, by which the said plaintiff was to keep and care for said stallion in the stud for the season ending the 15th of August, 1904, upon the following terms and conditions, to wit."

The terms of the contract are then set out and it is alleged that plaintiff duly kept them. It is also alleged:

"[That on and prior to the 26th day of January, 1904, and for a long time prior thereto, the said plaintiff was, ever since has been, and now is, the special owner of, and entitled to the immediate possession of, said stallion, named Diablo, under and pursuant to the terms and conditions of said contract made and entered into by and

between said plaintiff and said defendant Emma Murray, as hereinbefore alleged|."

It is further stated that on said 26th day of January, 1904,—

"The said defendants wrongfully and unlawfully took said stallion from the possession of said plaintiff at said fair ground near the City of Salem, in Marion County, Oregon, and ever since have and do now wrongfully and unlawfully withhold and detain the same from the possession of plaintiff in said Marion County, Oregon."

The complaint then states the damages plaintiff claims to have sustained in consequence of such taking and withholding the possession of the horse. The court, upon motion, struck from the complaint the parts thereof included within brackets as hereinbefore indicated.

The answer denies the material allegations of the complaint, and for a further defense avers that ever since Murray's death the stallion has been and is the property of the decedent's estate; that on March 25, 1904, the defendant Mrs. Murray was duly appointed administratrix of such estate, and, having qualified, she is entitled to the possession of the horse. As a second separate defense, it is alleged that at and prior to the making of the alleged contract with plaintiff Mrs. Murray, in consequence of grief occasioned by the death of her husband, was ill in body and mind, and so continued until January, 1904, and that by reason of such sorrow she was unable to understand or transact business, of which fact the plaintiff then well knew. A demurrer to each of the separate answers, on the ground that neither stated facts sufficient to constitute a defense to the complaint, was overruled, whereupon a reply was filed denying the averments of new matter in the answer, and a trial, being had, resulted in a judgment for the defendants dismissing the action, and plaintiff appeals.                    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. William Marion Kaiser* and *Mr. Woodson Taylor Slater.*

For respondent there was a brief with oral arguments by *Mr. John A. Carson* and *Mr. Anderson M. Cannon.*

MR. JUSTICE MOORE delivered the opinion of the court.

3. It is contended that William Murray delivered the stallion to plaintiff, whose possession thereof forms the basis of his right, and that by striking from the complaint the averments in relation thereto an error was committed. It is argued that such possession is supplemented by, but not dependent upon, the contract entered into with Mrs. Murray, which agreement was consummated to prevent her from obtaining possession of the horse in case she should be appointed administratrix of the decedent's estate. If the averments of the complaint, as prepared, can be construed as basing plaintiff's right of action upon the possession of the stallion which he secured from William Murray, the legal principal insisted upon is probably applicable; for the rule is quite general that bare possession of personal property, though the title thereto may be in another, affords the better right to the continued control thereof, as against mere trespassers, or persons who show no privity with the owner: *Lewis* v. *Birdsey*, 19 Or. 164 (26 Pac. 623); *Danielson* v. *Roberts*, 44 Or. 108 (74 Pac. 913, 65 L. R. A. 526, 102 Am. St. Rep. 627); *Woolfork's Adm'r* v. *Sullivan*, 23 Ala. 548 (58 Am. Dec. 305); *Wheeler* v. *McCorristen*, 24 Ill. 40; *Van Namee* v. *Bradley*, 69 Ill. 299; *Cummins* v. *Holmes*, 109 Ill. 15; *Cullen* v. *O'Harra*, 4 Mich. 132; *Van Baalen* v. *Dean*, 27 Mich. 104; *Anderson* v. *Gouldberg*, 51 Minn. 294 (53 N. W. 636).

4. The complaint, in our opinion, is not susceptible to the construction invoked, for plaintiff's right to the possession of the stallion is evidently based on the contract alleged to have been entered into with Mrs. Murray. It

will be remembered that plaintiff avers he was employed by William Murray to care for the stallion. If the word "employed," as thus used, was intended to mean that plaintiff was engaged to perform certain labor, the relation created between Murray and him was that of master and servant, which was severed by the employer's death; there being no averment that the contrary was stipulated by the terms of the agreement: 20 Am. & Eng. Enc. Law (2 ed.), 45. If, however, the word "employed" was used to express the creation of an agency coupled with an interest, so that plaintiff's right to the continued possession of the stallion extended after the death of the principal, that fact is not alleged in the complaint. It is stated therein that Mrs. Murray, on the death of her husband, became the owner of the horse, and, plaintiff having alleged that he entered into a contract with her whereby he was to keep and care for the stallion, he theoretically surrendered the possession of the property to, and secured a new right from, her.

5. The averment of obtaining possession of the horse from William Murray was evidently intended to state the fact by way of inducement, leading up to and explaining the subsequent contract alleged to have been entered into with Mrs. Murray, upon which, in our opinion, the right of recovery is predicated. As the matter thus alleged was immaterial (*Gardner* v. *McWilliams,* 42 Or. 14, 69 Pac. 915), no error was committed in striking it from the complaint, or in refusing to receive testimony offered by plaintiff tending to show that he secured possession of the horse from William Murray.

6. It is contended that the court erred in striking from the complaint the averment of plaintiff's special ownership of the stallion, and of his right to the possession thereof at the commencement of the action. In an action under our statute of claim and delivery, which is the common-law remedy of replevin, the complaint must show that the

plaintiff is entitled to the possession of the personal property in question when the action was commenced: *Kimball* v. *Redfield*, 33 Or. 292 (54 Pac. 216); *Simonds* v. *Wrightman*, 36 Or. 120 (58 Pac. 1100).

7    After eliminating the part of the complaint now under consideration, the remaining averments state the contract alleged to have been entered into with Mrs. Murray, and show that before the expiration of the time specified in the agreement the defendants unlawfully took possession of the horse.   As this action was instituted prior to August 15, 1904, and during the time plaintiff was entitled to keep the stallion as alleged, a right to the immediate possession thereof is disclosed by reasonable presumption, without a special averment to that effect.   It is not necessary to allege a fact which the law will presume, and, this being so, we think that, after striking from the complaint the clause in question, the remaining allegations show that plaintiff was entitled to the possession of the stallion when this action was commenced, and hence no error was committed as alleged.

8. It is insisted that an error was committed in overruling the demurrer interposed to that part of the answer alleging the title to the property as being in the estate of William Murray, deceased, and of the appointment of Mrs. Murray as administratrix of such estate, subsequent to the taking of the possession of the stallion from plaintiff.   Upon the death of any person intestate in this State, possessed of tangible goods and effects, such property passes by operation of law to his personal representative, who is entitled to the possession thereof until the administration is completed (B. & C. Comp. § 1147), and from whom only the title thereto can be derived in pursuance of orders made by the county court of the proper county in due course of administration: *Winkle* v. *Winkle*, 8 Or. 193 ; *Weider* v. *Osborn*, 20 Or. 307 (25 Pac. 715); *In re John's*

*Will*, 30 Or. 494 (47 Pac. 351, 50 Pac. 226, 36 L. R. A. 242); *State* v. *O'Day*, 41 Or. 495 (69 Pac. 542). Mrs. Murray was not the owner of the stallion, as stated in the complaint, if the word "owner," as there used, means the holder of the legal title. If some other person had been appointed administrator of her husband's estate, her right to the possession of the stallion, after such appointment, would have been no greater than that of a mere stranger: *Cullen* v. *O'Hara*, 4 Mich. 132.

In speaking of the right of action in respect to the personal property of a decedent, Mr. Chief Justice KNOWLTON, in *Flynn* v. *Flynn*, 183 Mass. 365 (67 N. E. 314), says: "Not even the sole heir at law, or legatee, has any title which he can enforce by suit against a third person." An exception to the rule last stated would probably exist where an heir, who had lawfully taken possession of the goods or chattels of an intestate, was deprived thereof by a wrongdoer, in which case the bare possession would ordinarily be a sufficient title to authorize the maintenance of an action of replevin to recover the property. As the title to the goods and chattels of a person dying intestate vests in the administrator upon his appointment, in trust, however, for the purposes of administration and distribution, there must be, in the orderly transaction of probate business, an interval of time after the death of the intestate when the title to such property necessarily rests in abeyance, pending the appointment of an administrator: *Jewett* v. *Smith*, 12 Mass. 309; *Cullen* v. *O'Hara*, 4 Mich. 132; *Lawrence* v. *Wright*, 23 Pick. 128. To bridge over such period, a legal fiction has been adopted to the effect that the granting of letters of administration relates back to the time of the death of the intestate, authorizing the administrator, when duly qualified, to maintain and defend suits and actions for injuries

47 OR.——5

to the personal property of the intestate, or for interference with the possession thereof, occurring after such death and prior to the appointment of a personal representative: 11 Am. & Eng. Enc. Law (2 ed.), 908; 1 Woerner, Am. Law of Administration (2 ed.), 173; *Hutchins' Adm'r* v. *Adams*, 3 Greenl. 174; *Gerard* v. *Jones*, 78 Ind. 378; *Brackett* v. *Hoitt*, 20 N. H. 257; *Cook* v. *Cook*, 24 S. C. 204.

Though, to prevent injustice and the occurrence of injuries, where otherwise there would be no remedy, the title to personal property of which an intestate died possessed vests by relation in the administrator when appointed (*Wilson* v. *Wilson*, 54 Mo. 213), such taking of the title cannot make wrongful the intervening possession of the heirs, whose duty it is to take possession of and preserve the property until an administrator can be appointed: *Hardy* v. *Wallis*, 103 Ill. App. 141. The doctrine of title by relation has no application, however, to wrongful acts of a person who, to the prejudice of a third party, officiously intermeddles with the goods and chattels of an intestate before he is appointed administrator of the latter's estate (*Bellinger* v. *Ford*, 21 Barb. 311); but the granting of letters of administration legalizes all acts, otherwise valid, that have been done by the administrator before his appointment: *Cook* v. *Cook*, 24 S. C. 204. Title by relation, upon principle, must be limited to valid acts done in respect to the goods and chattels of a deceased by a person prior to his appointment as administrator, and is tantamount to ratification. If such doctrine were extended further, it might result in imposing upon the estate of a decedent liability for the torts of a person committed after the death of the intestate and prior to the appointment of the wrongdoer as administrator of such estate.

In actions of claim and delivery, the primary relief sought is the recovery of the possession of personal property; but, if that cannot be secured, the alternative relief to which the plaintiff is entitled is the value of the goods or chattels taken or withheld, or of his special property therein. If the right of a plaintiff to the possession of personal property has been extinguished, after the taking or withholding thereof by another, an action of replevin by the former to recover the damages sustained by reason of the tort is not the proper remedy. So, too, the right of a defendant in an action of claim and delivery must be determined as of the day when the action is commenced; for, though such party may have wrongfully taken or unlawfully detained the goods or chattels from the owner, or from the person having a special property therein, if such title has been transferred to the defendant before the action is instituted, replevin will not lie. In the case at bar, William Murray having died intestate, leaving a widow and no issue, she is entitled to the residue of his personal property after the payment of the debts of the decedent and the charges and expenses of administration upon his estate: B. & C. Comp. § 5578. She was, therefore, directly interested in such estate (*Slate v. Henkle*, 45 Or. 430, 78 Pac. 325), and it was incumbent upon her to take possession of the personal property belonging thereto until an administrator could be appointed: *Hardy* v. *Wallis*, 103 Ill. App. 141; *Pritchard* v. *Norwood*, 155 Mass. 539 (30 N. E. 80).

It is alleged in the complaint that Mrs. Murray and her codefendants, who are her brother and brother-in-law, respectively, unlawfully took possession of the horse January 26, 1904. The answer shows that she was appointed administratrix of her husband's estate March 25, 1904. It is nowhere stated in the pleadings, however, that she by any means secured a transfer from plaintiff of his

special property in the horse. If Mrs. Murray unlaw-
fully took such possession, as alleged in the complaint, the
seizure was a tort, and the title which she subsequently
acquired by being appointed administratrix of her hus-
band's estate would not relate back to his death, so as to
validate her act in this respect, if it was wrongful. If,
however, the taking of such possession was lawful and to
the benefit of the estate, the title to the horse, which she
subsequently secured, related back to her husband's death,
and could be pleaded as a defense to the action of replevin,
not because she acquired a new title after the action was
commenced, but because she had authority in her own
right, as the next of kin, to take such possession at the
time it was obtained. The answer denied the alleged
wrongful taking of the horse, and for a first separate de-
fense averred Mrs. Murray's appointment as administra-
trix of her husband's estate. The theory of the defense,
as thus outlined, is tantamount to an admission that the
possession of the horse was taken from plaintiff, but that
such taking was lawful. If so, her subsequent title by ap-
pointment as administratrix related back to the time of
her husband's death; but, if unlawful, she could not bind
the estate by her act, and the doctrine of title by relation
could not be invoked. The defense of a subsequent title
necessarily hinged upon the nature of the possession taken
by the defendants, and, as the denials in the answer fairly
present the question of a lawful taking, the first separate
defense alleged was not vulnerable to demurrer, in over-
ruling which no error was committed.

It follows from these considerations that the judgment
should be affirmed, and it is so ordered.        AFFIRMED.