## IN RE ESTATE OF GEORGE L. BEARD
## DECEASED.

NATIONAL BANKS — STATUTORY LIABILITY OF STOCKHOLDER — ESTATES OF DECEDENTS — PREFERENCE OF CREDITORS — INSOLVENCY.

1. The statutory liability of a stockholder of a National bank to pay toward its debts a sum equal to the face value of his stock, is not entitled to preferential payment out of the funds of the insolvent debtor.

2. When a stockholder of a National bank dies subsequent to the insolvency of the bank, but before any assessment is made on his stock on account of such insolvency, and after his death, an assessment equal to the full value of his stock is made upon the administrator of his estate, and when his estate is insolvent, such assessment is not entitled to, and should not be given a preference over the claims of general creditors of the estate.

3. Although the entire assets of an intestate are held by the administrator in trust for the payment of the debts of the intestate, this of itself does not give to any particular debt preference in payment over any other debt.

4. The doctrine that the capital stock and other property of a corporation is to be deemed a trust fund for the payment of the corporate debts, so that creditors have a lien, or right of priority of payment on it, in preference to any of the stockholders, does not apply or go to the extent of giving to the receiver or to the creditors of an insolvent corporation, preference in payment from the estate of an insolvent stockholder, as against the general creditors of such stockholder, whether he be living or dead.

[Decided September 11, 1897.]

Reserved Questions from the District Court for Laramie County. HON. CHARLES W. BRAMEL, Judge of the Second Judicial District, presiding.

This controversy arose in a proceeding in the matter of the estate of George L. Beard, deceased. The receiver of the Cheyenne National Bank sought to obtain an order requiring the administrator to pay as a preferred claim

the amount due by reason of assessments made upon the bank stock held by the decedent. The Cheyenne National Bank closed its doors on account of insolvency November 13, 1891, and a few days subsequently, George L. Beard, a stockholder and formerly the cashier of the bank, died. Colin Hunter was appointed administrator of his estate, and Joel Ware Foster was afterward appointed receiver of the bank. An assessment of one hundred per cent was made upon the capital stock of the bank, pursuant to the provisions of Sec. 5151 U. S., Revised Statutes. Demand was made upon the administrator for the amount of the assessment due upon the stock held by Beard, and payment being refused, suit was brought in the Federal Court resulting in a decree to the effect that the sum of $6,839.93 with costs be forthwith paid by the defendant administrator, to the plaintiff receiver, out of the funds in his hands as administrator; and if the estate, after payment of the legal expenses incident thereto be insufficient to fully pay said sum, then said defendant pay to said plaintiff all and singular the sums remaining in his hands of said estate, after the payment of such regular expenses of administration. The receiver appeared in the district court for Laramie County, where the question of final distribution of the Beard estate was under consideration, and moved that the receiver's claim be paid in full, without regard to the assets and other liabilities of the estate, on the ground that the said claim was a trust fund, and formed no part of the general assets of the estate. This motion was contested by the administrator, and by another creditor, and the court reserved for the decision of the Supreme Court certain questions arising in the cause, upon the motion, deemed to be important and difficult. They are set forth in the opinion. It was admitted that the administrator had property of the estate in his hands, that the estate was insolvent, and that the claim of the receiver and of the contesting and other creditors had been presented for allowance to the administrator.

*Burke & Fowler*, and *Edmund J. Churchill*, for the receiver.

The U. S. court had jurisdiction of the suit brought upon the assessment, and as no suit had been brought in the State courts to test the liability of the administrator, a separate action had to be brought to determine such liability. (41 Fed., 486; 55 Fed., 803; 147 U. S., 507.) The decision of the federal court was based on the ground that the statutory liability of a stockholder in a national bank, created from his assets a trust fund, and that such assets, so constituting a trust fund, formed no part of the general assets of the decedent's estate. · The liability of stockholders of national banks and of other corporations founded upon statutes similar to Sec. 5151, Rev. Stat. U. S., for unpaid subscriptions, has been so frequently upheld that the rule is well settled. (17 Wall., 610; 91 U. S., 45; 33 N. Y., 297; 22 How., 380; 3 Keyes, 521; 8 Ga., 486; 15 How., 304; 8. Pet., 381; 91 U. S., 56; 103 id., 515; 9 Metc., 182; 15 Mass., 501; 42 Ia., 478; 65 id., 336; 5 Barb., 184; 10 Paige, Ch., 290; 6 S. & M., 513; 60 Pa. St., 124;" 59 Md., 599; 13 S. & M., 558; 105 Pa. St., 49.) Not only does the unpaid subscription on capital stock constitute a trust fund, but to the same extent does the fund created by the assessment declared by the comptroller, constitute a trust fund for the benefit of creditors. (Hobart v. Gould, 8 Fed., 57; King v. Armstrong, 34 N. E., 163; Irons v. Bank, 21 Fed., 199; Stephens v. Bernays, 44 id., 642; Laing v. Stevens, 17 Blatch., 259; Davis v. Weed, 44 Conn., 569; Richmond v. Irons, 121 U. S., 27; Witters v. Sowles, 32 Fed., 130.)

It is insisted that the purchaser of national bank stock charges his estate with a special liability under the provisions of Sec. 5151, R. S. U. S., and in the event of his death the liability continues, not as a debt of the decedent, but as a trust held by him for the bank's creditors. It need not be traced, because it is not the result of a special deposit. It is a statutory liability, and must first be

satisfied out of his property or assets before general creditors can demand an application of the funds of the estate to the payment of their claims. (Waite v. Dowley, 94 U. S., 534; Thompson v. Reno Sav. Bk., 19 Nev., 242.) The receiver's claim is entitled to a preference, because the bank is an institution created by law, and under statutes (R. S. U. S., Secs. 5151, 5152, and 5210), which assume to guarantee to depositors that their deposits will be protected by a sacred fund held by the stockholders, whose names are publicly given.

*Clark & Breckons*, for the administrator

The federal court had no jurisdiction to insert in its decree an order preferring the claim of the receiver. (Wickman v. Hull, 60 Fed., and cases cited; see also 44 Fed., 642.) We concede the correctness of the trust doctrine as to capital stock of a corporation when confined in its application to cases similar to those in which it has been applied. In that respect unpaid subscriptions differ in no wise from any other corporate property. (102 U. S., 148; 114 N. Y., 587.) The correctness of that doctrine does not tend to establish the claim of the receiver for preferential payment. Counsel for the receiver have failed to recognize the distinction between a trust fund in the hands of a bank receiver, and a trust fund in the hands of an administrator of a deceased shareholder. The liability arising under an assessment upon the stock is contractual, and differs not in respect to right of payment from a liability upon any other debt of the decedent to the bank. Except by force of a statute expressly authorizing it, one class of creditors of an estate of a decedent is not entitled to a preference over any other class. The receiver's contention is wholly unsupported by authority or reason. There are authorities denying such preferential right. (Peters v. Bain, 133 U. S., 670; Achenbach v. Coal Co., 2 Kan. App., 357.)

*John W. Lacey*, for the contesting creditors.

It is not contended, as we understand it, that the decree entered by the federal court attempted to settle the question whether or not the receiver was entitled to preferential payment. So far as the record discloses there was nothing before that court showing the existence of other debts, and the court might well have entered the judgment in the form in which it is entered in the absence of any showing as to other debts. It then would have been proper to provide that in case the assets were insufficient to pay this claim in full, the administrator should pay the balance in his hands upon the claim after deducting administration expenses. But, whatever might have been the intention of the federal court, that court had no jurisdiction to determine the question of preferential payment; indeed, had no jurisdiction beyond the mere question of the amount due from the estate of Beard, deceased, to the receiver upon the assessment in controversy. (60 Fed., 326; 7 Wall., 425; 21 id., 276; 113 U. S., 73; 119 id., 587.)

These authorities clearly establish the rule that the principle of non-interference with possession and control of a court of probate over the property of and estate being administered by it does not defeat the right of other courts to hear and adjudge the question of the existence of the debts due from the deceased testator or intestate. That question can be heard and determined without interfering with the possession of the property by the State court. The limitations on such a judgment, however, are that the judgment creates no lien upon the property of the estate, nor does it authorize the levy of an execution for its enforcement. The judgment simply determines the existence of a claim against the estate, and adjudges the amount thereof, ' but the debt thus established must take its place and share of the estate as administered by the probate court, and it can not be enforced by process directed against the property of the decedent.' " (149 U. S., 620; 43 Conn., 569.)

The trust-fund doctrine, upon which counsel for the

receiver base their contention, has no possible application to the question here.    If their contention be carried to its logical conclusion, it would result in the bank and its receiver holding a lien upon the property of every debtor. of the bank by virtue of the fact that because the bank is insolvent, all of its capital is a trust fund for the payment of creditors.    There is nothing in the banking law creating such a lien.    Our statutes are strict and express against secret liens.    There is no principle which makes a liability for an unpaid stock subscription of higher validity than a debt for borrowed money.    There is no statute which gives to the creditors of the bank any special privileges as against the creditors of Beard himself, who loaned him their money on the faith of the property held by him, and which appeared unincumbered.    The case of Peters v. Bain, 133 U. S., 670, denying the right of preference claimed in this case by the receiver, is not out of harmony with the trust idea.    Calls made upon a bankrupt shareholder in the proceeding to wind up an insolvent corporation, must be proved by the receiver or liquidator of the company in a court of bankruptcy, where he takes his dividend with other creditors of the banker. (Law R. 2 Chan., 578; id., 4 Chan., 58; 2 De Gex., M. & G., 271.)    It is clear that there is no preference.    (Bank v. Stockholders, 6 R. I., 154; Grew v. Breed, 10 Metc., 369; 61 Fed., 912; id., 538; 62 N. W., 94; 62 id., 96; 63 id., 1018; Peters v. Bain, supra.)

CONAWAY, CHIEF JUSTICE.

The intestate left an estate insufficient to pay his debts in full.    He was a stockholder in the Cheyenne National Bank, an insolvent corporation, now in the hands of Joel Ware Foster as receiver.    Intestate was liable under the laws of the United States upon the subject of banking, for the debts of the corporation to an amount equal to the par value of his stock in the corporation.    This liability survives against his estate.    The amount is fixed by the judgment and decree of the United States Circuit

Court for the District of Wyoming at $6,139.93, and this amount is not in dispute.    But Foster as receiver of the Cheyenne National Bank claims that this liability constitutes a preferred claim against the estate.    He filed his motion in the district court for Laramie County, a court of probate jurisdiction, and having jurisdiction of this estate, that the administrator pay to him this claim in full without regard to the assets and other liabilities of the estate, "for the reason," as stated in the motion, "that said claim aforesaid is a trust fund and no part of the general assets of said estate."

In the brief filed on behalf of the receiver this proposition is stated in somewhat different language.    It is claimed that the statute establishing the stockholder's liability "creates from his estate a trust fund for the payment of the debts of the bank," and further, that the decree of the United States Circuit Court was based upon the ground that the statutory liability of the stockholder "created and carved from his assets a trust fund for the payment of the debts of the bank, and that, therefore, the assets of the decedent to the amount of this guaranty or fund, constituted in fact no part of the general assets of the decedent's estate, but are trust funds, dedicated to the payment of this liability."

Upon the hearing of this cause in the district court, upon the motion of the receiver for preference in payment, that court found that important and difficult questions arose in the cause, and upon its own motion and with consent of all parties, reserved and sent to this court for decision such questions.    They are three in number.

1. Does the statutory liability of a stockholder of a national·bank to pay toward its debts a sum equal to the face value of his stock create from his assets a trust fund for the payment of the debts of the bank?

2. Is the liability created by the statute mentioned in the last question entitled to preferential payment out of the funds of the insolvent debtor?

3. Where a stockholder of a national bank dies subse-

quent to the insolvency of the bank, but before any assessment is made on his stock on account of such insolvency, and after his death an assessment equal to the full value of his stock is made upon the administrator of his estate, and where his estate is insolvent, should such assessment be given a preference over the claims of general creditors?

It is not questioned that the entire assets of the intestate are held by the administrator in trust for the payment of the debts of the intestate. But this of itself does not give to any particular debt preference in payment over any other debt. The claim urged on behalf of the receiver is that the liability of intestate upon his bank stock is entitled to preference.

Under Section 5152, U. S. Rev. Stat., the administrator is not personally liable on account of this stock, but the estate and funds of intestate in his hands are liable in like manner and to the same extent as the intestate would be, if living.

It is not questioned that the principles involved are the same as if the liability of intestate had been for unpaid subscription upon his capital stock.

One authority states the "trust fund" doctrine in such cases as follows: "It is a favorite doctrine of American courts that the capital stock and other property of a corporation is to be deemed a trust fund for the payment of the debts of the corporation, so that the creditors have a lien or right of priority of payment on it, in preference to any of the stockholders of the corporation." (Thompson's Liability of Stockholders, Sec. 10.)

It is apparent that the doctrine must have a much more extensive application than this to sustain the claim of the receiver in the case at bar. In a note to the section quoted the learned author says: "I have not found a similar statement of doctrine in any book of English reports. The idea appears first to have been formulated by the fertile brain of Mr. Justice Story, in Wood v. Dummer, 3 Mason, 308, decided in 1824." But the case

of Wood v. Dummer has been extensively followed by both federal and State courts, and the doctrine of that case is perhaps now too firmly established in America to be denied. The case was a bill in equity, brought by some of the creditors against some of the stockholders of the Hallowell and Augusta bank, and sustained on the ground of the impossibility of bringing into the suit all the parties interested. There was a recovery against the stockholders, the "trust-fund" doctrine being announced, as it appears, for the first time. No question of priority of payment arose.

A good statement of the result of the cases upon this branch of the law of the liability of stockholders is given in 23 Am. & Eng. Ency. of Law, at page 855, in these words: "The liability of members of a corporation is founded on statute. But in the modern stock corporation, where membership is usually acquired by entering into the contract of subscription, each member may be said to assume the obligation to pay to the company the full amount named in his contract, i. e., he agrees to pay the corporation only, and the satisfaction of its claim in any manner acceptable to it, discharges him from further liability. But the American courts of equity have evolved the doctrine that by the act of subscription one becomes liable for the full amount thereof to corporate creditors as well as to the corporation; that all who deal with the latter have a right to rely upon the total amount subscribed as a security for their claims — in a word, and in the language of the courts themselves, that unpaid subscriptions are a "trust fund" for the payment of creditors. While in its origin this doctrine is distinctively American, and does not obtain in England, yet by statute, a limited application of similar principles is there allowed. The more recent applications of the doctrine have been subjected to considerable criticism in this country."

This statement of the law is sustained by numerous citations of cases, and is followed by a discussion of the applications of the doctrine. But nothing appears to

indicate that it has ever been applied to give to the stockholders' liability for unpaid subscriptions for stock a preference in payment over other debts of the stockholder. Neither have counsel cited a case in which such application of the "trust-fund" doctrine has been made; neither has such a case fallen otherwise under our observation.

In the case of Thompson v. Reno Savings Bank, and others, 19 Nev., 242, it was held that it was not necessary to present to the executor or administrator of a deceased stockholder a claim for unpaid subscription to the capital stock of the bank before bringing an action thereon, although the statute provided that no holder of any claim against the estate of a decedent should maintain an action unless such presentation had first been made. The following reason is given in the opinion of the court:

"The stockholders are trustees of the creditors, and suits to establish and enforce the trust are maintained against the representatives of deceased persons, upon the theory that the decedent held money equal to the amount of his unpaid subscription, in trust for the creditors, and that the fund, although incapable of identification, has passed into the hands of the executor or administrator. Such a fund is properly no part of the estate of a deceased person. The deceased stockholders were trustees and not debtors of the bank's creditors."

The doctrine of this case fully sustains the contention of the receiver. If the administrator has taken possession of any money or property that did not belong to the intestate and did belong either to the bank or its creditors, he should deliver such money or property to the receiver who represents both the bank and its creditors.

But no trust fund in money and no trust property ever passed into the hands of intestate from any source. The trust is purely constructive. The fund is purely constructive. It may have no existence in fact. The stockholder may have neither property nor money, but his debt to the corporation for unpaid subscription for stock is held to be a trust fund. The corporation, according to the

8

American doctrine, may not release the debt to the prejudice of its creditors without payment in full. If the corporation does release the stockholder without full payment, the creditors of the corporation may resort to the stockholder for payment to the extent of the stockholder's liability for unpaid subscriptions. To this extent the cases go, and some seem to go farther. But I do not find any case that goes to the extent of charging the property of a stockholder with a trust or lien on account of his unpaid subscriptions for stock.

The doctrine of the Nevada case, however, would lead to that result. It was a suit in equity by a judgment creditor of an insolvent corporation to subject unpaid subscriptions for stock to the payment of his debt. Two of the defendants were representatives of deceased stockholders. Of the conclusion that the statute requiring claims to be presented to the executors or administrators of deceased persons before suit did not apply in that case, one commentator says:

" It is believed that this conclusion can not be maintained upon principle. The rule which allowed a trust fund to be followed from hand to hand and recovered, is believed to apply only in cases where the fund is earmarked, or separated from the remainder of the estate of the trustee in such a manner that it can be identified." Thompson on Law of Corporations, Sec. 3328.

And this suggests the question which must arise in every case under the doctrine of the Nevada court, what portion of the property of the stockholder constitutes the trust fund which is properly no part of his estate? Does the trust attach to all of his property? Does any one purchasing his property with knowledge of his indebtedness to a corporation for unpaid subscription for stock take the property subject to the trust?

No court has answered these questions directly, because no court has made the application of the trust-fund doctrine urged on behalf of the receiver in the case at bar. And, on the other hand, it must be said that no court has

ruled directly against this application of the doctrine.    It seems that none of the courts have been called upon to rule directly upon the exact question presented here.    The application of the trust-fund doctrine claimed here is evidently a new application of that doctrine.

The case of Peters, receiver, v. Bain, 133 U S., 670, cited by counsel, has, however, a direct bearing upon the question under consideration.    Bain & Bros. were directors and stockholders to a large amount in the Exchange National Bank of Norfolk.    The bank was insolvent. Bain & Bros. were insolvent.    They made an assignment of all of their property for the benefit of their creditors. Peters, receiver of the Exchange National Bank of Norfolk, brought the action by bill in equity to set aside the assignment, and subject the assigned property to the payment of debts due the bank.    The liability of the Bains on account of their stock is considered, beginning at page 691, opinion of Chief Justice Fuller.    The validity of the deed of assignment and the trust-fund doctrine are disposed of in the following language:

" Counsel contends that the deed was in contravention of Sections 5151 and 5234 of the Rev. Stat. of the U. S., which provide that the shareholders of every national banking association shall be held individually responsible for its debts to the extent of the amount of their stock, and additional thereto, and that the comptroller can enforce that individual liability.    It is insisted that the capital stock is a trust fund of which the directors are the trustees, and that the creditors have a lien upon it in equity; that this applies to the liability upon the stock of a national bank; and that no general assignment of his property for the payment of his debts can lawfully be made by a shareholder, certainly not when he is a director.    Undoubtedly, unpaid subscriptions to stock are assets, and have frequently been treated by courts of equity as if impressed with a trust *sub modo* in the sense that neither the stockholders nor the corporation can misappropriate such subscriptions so far as creditors are con-

cerned. Richardson's Executor v. Green, Ante, 30, 44. Creditors have the same right to look to them as to anything else, and the same right to insist upon their payment as upon the payment of any other debt due to the corporation. The shareholder can not transfer his shares when the corporation is failing, or manipulate a release therefrom for the purpose of escaping his liability. And the principle is the same where the shares are paid up, but the stockholder is responsible in respect thereof to an equal additional amount. There was, however, no attempt to avoid this liability, and the fact of its existence did not operate to fetter these assignors in the otherwise lawful disposition of their property for the benefit of their creditors."

This needs no comment. It appears to leave no room for the application of the trust-fund doctrine to the extent of giving to the receiver or to the creditors of an insolvent corporation, preference in payment from the estate of an insolvent stockholder as against the general creditors of such stockholder, whether he be living or dead. The trust evidently can have no greater effect on the property in the hands of an administrator than in the hands of the assignee.

Of the three questions submitted, the first is answered yes, to the extent indicated in this opinion. The second and third are answered in the negative.

POTTER, J., and CORN, J., concur.