Argued 24 June; decided 14 July, 1902.

### STATE *v.* O'DAY.

### STATE *v.* TARPLEY.

[69 Pac. 542.]

EXAMPLE OF AN APPEALABLE ORDER.

1. An order in an escheat proceeding directing specified persons who are not parties thereto to turn over to a receiver certain property which has been received by them is an appealable order, under Section 535 of Hill's Ann. Laws.

CONTROL OF PERSONAL PROPERTY DURING ADMINISTRATION.

2. The personal property of a decedent goes to the administrator, and all title thereto must be derived through him ; but the title to real property descends at once and directly to the heirs under Section 1120 of Hill's Ann. Laws.

ESCHEAT—RIGHT OF STATE TO APPEAR IN COUNTY COURT.

3. The state, when in pursuit of escheated property, has the same right to appear in a county court and determine questions of heirship that a natural person has, and it is bound by the proceedings in that court, until reversed or set aside, as a natural person would be ; in other words, having possession of the personal property of an estate, and having given the notice of distribution designated by statute, and in the manner required, the orders of the county court based thereon cannot be collaterally attacked.

RELATIVE POSITION OF PROBATE AND ESCHEAT PROCEEDINGS.

4. Construing together, Section 895 of Hill's Ann. Laws, conferring on county courts exclusive probate jurisdiction ; sections 1183 and 1191, directing the payment of claims, charges and legacies, and the distribu-

tion of the remaining proceeds of personal property; section 3099, providing that the residue of personal property shall escheat; and sections 3135, *et seq.*, prescribing the method of procedure; it is reasonably apparent that the beginning of an escheat proceeding in a circuit court, as provided by section 3136, was not intended to interfere with or to interrupt the usual proceedings in the county court in a given estate, or to affect the jurisdiction of that court in any way.

From Multnomah: JOHN B. CLELAND, Judge.

From Multnomah: ARTHUR L. FRAZER, Judge.

In. September, 1895, one P. C. McCann died intestate in Multnomah County, leaving personal property to the value of about $8,000, and J. S. Cooper was regularly appointed administrator of his estate by the county court of that county. After the estate had been fully administered, Cooper filed his final account, showing a balance on hand for distribution of $6,268.47 in cash, 10 shares of the capital stock of the First National Bank of Independence, and a few other articles of personal property. The court thereupon set a day for hearing objections to such final account and for the settlement thereof, and directed that notice be given as provided by law, which was done accordingly. But before the account had been settled and the property distributed, and on September 7, 1899, Cooper was removed as administrator, and John F. Logan appointed as his successor. A few days thereafter an information was filed, under Section 3137, Hill's Ann. Laws, in the circuit court of Multnomah County,—Judge Cleland presiding,—for a decree escheating the property to the state. The information alleges the death of McCann without heirs, the appointment of Cooper, his subsequent removal, the appointment of Logan, that certain named persons claimed to be the heirs of McCann, and that the property was then in the possession of Logan as administrator of the estate. An order was made by the circuit court directing and requiring all persons interested in the estate to appear and show cause, if any, on the 6th of November, 1899, why the title to the property should not vest in the state, and that a copy of such order be printed in the Pacific Christian Advocate, a newspaper published in the county, for six consecutive weeks. Sum-

mons was also issued in regular form, and served upon both
Cooper and Logan, but upon no other person. On the 2d of
November, Logan filed an answer setting up the proceedings in
the county court, and alleging that he was the regularly ap-
pointed and qualified administrator of the estate; that he had
in his possession as such administrator certain personal property
belonging to the estate; that the estate was still in process of
administration, and that certain named persons who claimed to
be the heirs had applied to the county court for an order of dis-
tribution; that their rights and interests were then in process
of adjudication; and that no final order had been made or
entered. Thereafter, and before any further proceedings were
had on the information, the county court proceeded to a final
settlement of the estate, and on November 3, 1899, regularly
entered an order of distribution, adjudging and decreeing that
James McCann, Kate Wood, and Anna McDonough were the
lawful heirs of the decedent, and entitled to the property, and
directing Logan, as administrator, to deliver it to them. On
the same day, in obedience to the order, Logan delivered all the
property to the defendants, O'Day & Tarpley, attorneys for the
persons whom the county court adjudged to be the heirs; and
the county court made an order discharging him as adminis-
trator, and exonerating his bondsmen. On the following day
an application was made in the escheat proceeding for the ap-
pointment of a receiver, and by order of the circuit court a notice
was served upon Logan and O'Day & Tarpley, requiring them
to appear on the 7th and show cause, if any they had, why the
appointment should not be made. No service of this notice was
made upon the persons adjudged by the county court to be the
heirs of the estate, nor were they or any of them except James
McCann made parties to the escheat proceeding. Logan an-
swered, setting up his discharge by the county court, and alleging
that he had delivered the property in controversy to O'Day &
Tarpley. The latter appeared specially and objected to the
jurisdiction of the court over them and their clients; but, such
objection being overruled, they answered, setting up in detail

41 OR.— 32

the proceedings in the county court. A reply was filed, denying the heirship of the clients of O'Day & Tarpley, and the jurisdiction of the county court to make an order of final distribution or to determine the question of heirship. A receiver was afterward appointed, and O'Day & Tarpley were ordered and directed to deliver and turn over to him all the personal property received by them from the administrator of the McCann estate under the orders of the county court, which they refused to do; and on January 15, 1900, an information was filed before Judge Frazer for an order requiring them to show cause why they should not be punished for contempt. As a justification for their acts, they set up in detail the proceedings in the escheat case and also in the county court. Judge Frazer, however, refused to re-examine the questions passed upon by Judge Cleland, adjudged them guilty of contempt, and directed that they be imprisoned until the order was complied with. O'Day & Tarpley appeal from this order, and also from the one directing them to deliver the property in their possession to the receiver.

REVERSED.

For appellants there was a brief over the names of *William W. Cotton* and *William D. Fenton,* with an oral argument by *Mr. Cotton.*

For the State there was a brief over the names of *Geo. E. Chamberlain,* District Attorney; *John T. Whalley,* and *Chester V. Dolph,* with an oral argument by *Mr. D. R. N. Blackburn,* Attorney General, and *Mr. Dolph.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. It is insisted that the order of Judge Cleland requiring the defendants O'Day & Tarpley to deliver to the receiver appointed in the escheat proceedings the property received by them from McCann's administrator in pursuance of the orders of the county court was not final, and therefore not appealable. The statute provides that an order affecting a substantial right, and

which in effect determines the action or suit, shall be deemed a judgment or decree from which an appeal may be taken (Hill's Ann. Laws, § 535) ; and it is believed that, so far as the rights of O'Day & Tarpley and their clients are concerned, the order requiring them to deliver possession of the property to the receiver is within the meaning of this section. They were not parties to the escheat proceeding, and as to them the order was practically final. It proposed to take from them possession of property to which they asserted title, and deliver it to another, in a proceeding in which they were not parties, and could not further appear as a matter of right. It would seem that the orderly way would have been either for the receiver to proceed against O'Day & Tarpley in the usual manner to try their rights, or the information should have been amended so as to make them parties to the suit, and thus give them a right to appear in the escheat proceeding and litigate the questions sought to be determined. The order requiring them to deliver the property to the receiver, without their being parties to the proceeding, in effect settled their rights and those of their clients in the subject-matter of the litigation. It would seem, therefore, to have been an appealable order: *Basche* v. *Pringle,* 21 Or. 24 (26 Pac. 863) ; *Deering* v. *Quivey,* 26 Or. 556 (38 Pac. 710) ; *State* v. *Security Sav. Co.,* 28 Or. 410 (43 Pac. 162) ; *Therkelsen* v. *Therkelsen,* 35 Or. 75 (54 Pac. 885, 57 Pac. 373). But whether it was or not, the appeal in the contempt proceedings brings up for consideration the same questions sought to be raised on the other appeal.

Upon the merits two questions are presented: First, the effect of a decree of a county court determining who are the heirs of a deceased person, and distributing the personal property belonging to the estate among them; and, second, the effect of the filing of an information in an escheat proceeding, under section 3137, upon the previously acquired jurisdiction of a county court.

2. By Section 895, Hill's Ann. Laws, the county court is invested with exclusive jurisdiction in the first instance pertaining to a court of probate,—among other things, "to direct and control the conduct and settle the accounts of executors, administrators, and guardians," and "to direct the payment of debts

and legacies, and the distribution of the estates of intestates";
and by section 1191 it is provided that, after the payment and
satisfaction of all claims and charges against the estate, the
county court, or judge thereof, shall direct the payment of lega-
cies, and the distribution of the remaining proceeds of personal
property among the heirs and other persons entitled thereto.
Here is positive legislative authority for a county court, not
only to settle the accounts of executors and administrators, but
to direct the payment of debts, and the distribution of the estate
of intestates among the heirs or other persons entitled thereto;
and the statute provides that its judgments and decrees shall be
final and conclusive upon all persons as to the title and status
of the property: Hill's Ann. Laws, § 733. There is a marked
difference, however, in its jurisdiction over real and personal
property. The title to real property descends to the lawful heirs
immediately upon the death of the ancestor, subject only to the
right of the administrator or executor to possession for the pur-
pose of paying debts, etc.: Hill's Ann. Laws, §§ 1120, 1192;
*Clark* v. *Bundy,* 29 Or. 190 (44 Pac. 282) ; *In re John's Will,*
30 Or. 494 (47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242). No
order of the county court, therefore, sitting for the transaction
of probate business, attempting to partition real estate of a
decedent, or determining the question of heirship, can affect
the title: *Hanner* v. *Silver,* 2 Or. 336. And such is the char-
acter of cases cited by the plaintiff: *Sands* v. *Lynham,* 27 Grat.
291 (21 Am. Rep. 348) ; *Bresee* v. *Stiles,* 22 Wis. 120; *Ruth* v.
*Oberbrunner,* 40 Wis. 238; *Cryer* v. *Andrews,* 11 Tex. 170;
*Crosley* v. *Calhoon,* 45 Iowa, 557. But the personal property of
a decedent goes by operation of law to the administrator, and
the title thereto must be derived through him: *Winkle* v.
*Winkle,* 8 Or. 193; *Weider* v. *Osborn,* 20 Or. 307 (25 Pac. 715).
The question was directly involved in *Winkle* v. *Winkle,* where
it was held that the county court has exclusive jurisdiction over
the distribution of personal property of deceased persons, and,
if there be an antenuptial contract which affects such property,
it should be proved, and the rights of the parties thereunder
determined by the county court. Mr. Justice BOISE, in speaking

for the court, said: "The title to the personal property of a deceased person must be derived from the administrator through the orders of the court, and the orders of said court and the distribution made under them of personal property are binding on all persons who are interested in the estate, provided such orders are regular and in due form of law. The antenuptial contract set out in this case should have been proven in the probate court, and the rights of the parties affected by it there determined; and, if the parties were not satisfied with the proceedings there had, then either could have appealed to the circuit court. If they neglected to appeal, the decree of the probate court became final, and is not subject to be reviewed in a court of equity."

3. The distribution by a county court of the personal property of a deceased person is in the nature of a proceeding *in rem,* and, like all proceedings of that kind, is not only binding, where the statutory notice has been given, on the parties who actually appeared in the case, but on all others. When acting within its jurisdiction, and after due notice, its decrees on the distribution of personal property, like adjudications of prizes and forfeitures, and matters of collision in admiralty cases, and orders in proceedings of insolvency and bankruptcy, are conclusive upon all persons. "A proceeding for distribution," says Mr. Justice HARRISON, "is in the nature of a proceeding *in rem;* the *res* being the estate which is in the hands of the executor under the control of the court, and which he brings before the court for the purpose of receiving directions as to its final disposition. By giving the notice directed by the statute the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate; and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appear and present his claim, or fail to appear, the action of the court is equally conclusive upon him, 'subject only to be reversed, set aside, or modified on appeal.' The decree is as binding upon him if he fail to appear and present his claim as if his claim, after pre-

sentation, had been disallowed by the court": *William Hill Co.*
v. *Lawler,* 116 Cal. 359 (48 Pac. 323). See, also, 2 Black,
Judgm. § 633; 2 Freeman, Judgm. (4 ed.) § 581; 2 Woerner,
Adm'n (2 ed.), § 561; *Goad* v. *Montgomery,* 119 Cal. 552 (51
Pac. 681, 63 Am. St. Rep. 145) ; *Bramell* v. *Cole,* 136 Mo. 201
(37 S. W. 924, 58 Am. St. Rep. 619) ; *Exton* v. *Zule,* ·14
N. J. Eq. 501. Under Hill's Ann. Laws, § 3136, the state is
entitled to maintain any action, suit, or proceeding necessary
for the enforcement or protection of its rights in the matter of
escheated property in like manner and with like effect as any
natural person, so that it could have appeared in the county
court and there presented for adjudication the question as to
whether McCann died without heirs. The notice published in
obedience to the orders of the county court upon the filing of
Cooper's final account was sufficient notice to it and all other
parties interested to render the decree of distribution, which
was necessarily a part of the final settlement of the estate, con-
clusive, until reversed or set aside in some direct proceeding.
The fact that Cooper was removed pending the settlement, and
Logan appointed as his successor, could not destroy the virtue
or efficacy of the previous notice, or render it necessary to give
another. At the time of Cooper's removal the estate had been
fully administered, and the final account filed. Nothing re-
mained to be done with the property in controversy except to
distribute it among the parties legally entitled thereto. The
court had jurisdiction and custody of the property, and by the
notice the statutory requirements were complied with, and all
persons given their day in court, and this was all the law
required: 2 Woerner, Adm'n (2 ed.), § 505; *Kearney* v. *Kear-
ney,* 72 Cal. 591 (15 Pac. 769). Unless, therefore, the juris-
diction of that court was ousted by the mere filing of the
information in the escheat proceeding, the order of final distri-
bution is conclusive.

4. By the statute the county court is given exclusive juris-
diction in the first instance over the administration of the
estates of deceased persons, and the distribution of the personal
property thereof, and we think it immaterial to consider whether

the legislature can constitutionally deprive it of such jurisdiction. As we construe the escheat law, it does not undertake to interfere in any way with the jurisdiction of the county court in probate matters, or with the jurisdiction of any other court, lawfully acquired. It nowhere provides that the filing of an information in the circuit court to escheat personal property of the decedent will oust the county court of a previously acquired jurisdiction to settle the estate of the deceased, or vest in the circuit court the right to determine questions which by law belong exclusively to the county courts. Prior to 1887 it was made the duty of the administrator, under the direction of the county court, to sell property belonging to the estate, and pay the net proceeds thereof into the treasury of the state, whenever the administration had been completed and there were no known heirs, or in case the heirs did not claim the property within six months thereafter: Deady & Lane's Gen. Laws, p. 582. By the act of 1887 (Hill's Ann. Laws, § 3135, *et seq.*) the county court was relieved of that duty. But the act referred to does not in any way interfere with its jurisdiction in transacting probate business to proceed to the final settlement of an estate, and the adjudication of such questions as necessarily arise therein. Determining whether property has escheated to the state, and deciding the questions involved in such a proceeding, constitute no part of the ordinary duties of a probate court, and the act of 1887 was simply designed to transfer the general right to adjudicate upon such matters to the circuit court. It was intended to provide a method of procedure by which it may be judicially determined that the property of an intestate dying without heirs has escheated to the state. But any proceeding commenced for that purpose must necessarily be in subordination to the rules of law essential to the orderly administration of justice. It is a familiar principle that, where a court has acquired jurisdiction over the subject-matter and the parties in interest, it is its duty to proceed with the consideration of the matters presented to final determination, unless it is prevented from doing so by an inujnction or some other legal process rendering such proceeding impracticable. A simple objection,

or an objection followed by the commencement of some action or proceeding in another court, will not justify a delay or the refusal to exercise its own rightful authority. This rule has peculiar force when applied to the proceedings of a county court in the transaction of probate business. An administrator is an officer of that court, and takes possession of the estate in obedience to its orders, and such possession can not be disturbed by process out of another court: *Byers* v. *McAuley,* 149 U. S. 608 (13 Sup. Ct. 906) ; *Blake* v. *Butler,* 10 R. I. 133; *Pitkin* v. *Pitkin,* 7 Conn. 315 (18 Am. Dec. 111) ; *In re Stilwell,* 68 Hun. 406 (23 N. Y. Supp. 65).

It is not reasonable to suppose that the legislature intended that the mere commencement of an escheat proceeding by direction of the governor should have the effect to oust the previously acquired jurisdiction of a county court to proceed to the final settlement of an estate, and the distribution of the personal property belonging thereto. It is only "the residue" of the personal property of one dying without heirs, after "the payment of the debts of the deceased, and the charges and expenses of administration," that escheats to the state (Hill's Ann. Laws, § 3099), and such residue can only be determined after an administration in the county court. If the legislature had intended to make such a radical innovation in the law governing the jurisdiction, powers, and duties of a county court in probate matters as is contended for by the plaintiff, it, no doubt, would have clearly so provided; but, not having done so, the courts ought not to resort to some ingenious construction of the law to accomplish such a result. If a circuit court, through a receiver or otherwise, can take the property of a decedent out of the hands of an administrator, and proceed to make a final disposition thereof, it could and would prevent the payment of funeral charges, expenses of last sickness, debts, and other claims against the estate, as provided for in the statute (Hill's Ann. Laws, § 1183), and would also prevent an administrator from settling his account (Hill's Ann. Laws, § 1175) and obtaining an order exonerating him and his bondsmen from further liability. An administrator is charged with property coming into

his hands belonging to his intestate (Hill's Ann. Laws, § 1176), and he can only settle his accounts with and obtain his discharge from the county court appointing him. It seems clear to us, therefore, that the legislature did not intend that the mere commencement of an escheat proceeding in the circuit court should interfere with or in any way disturb pending proceedings in the county court.

It is not necessary for us to determine at this time whether, in case a county court, on final settlement of an estate, should ascertain and determine that the intestate died without heirs, it would be necessary to commence proceedings, under section 3137 of the statute, to obtain a judicial determination, binding on all the world (*Hamilton* v. *Brown,* 161 U. S. 256, 16 Sup. Ct. 585), that the property had escheated to the state. It is sufficient for the purposes of this case that the county court of Multnomah County had jurisdiction and authority to determine the question of heirship upon an application for final distribution of personal property of McCann's estate. It follows that the proceedings in the court below must be reversed, and it is so ordered.

REVERSED.

Decided 30 June, 1902; rehearing denied.