Argued at Pendleton May 2, reversed June 13, 1922.

# MAHON *v.* HARNEY COUNTY NAT. BANK.

### (206 Pac. 224.)

**Executors and Administrators—Title to Personal Property of Estate is in Personal Representatives.**

1. The executor has exclusive title to personal property of the estate for purposes of administration.

**Banks and Banking—Money on General Deposit in Bank is Bank's Property.**

2. The relation of debtor and creditor exists between a bank and a depositor and the bank may apply the deposit on a note due from the depositor.

**Executors and Administrators—There is No Setoff Against a Trustee Depositor.**

3. The right of a bank to apply a deposit on a note due from a depositor does not apply to a trustee depositor. *Held*, the estate was not indebted to the bank and the bank could not set off money of the estate against note signed by the decedent.

**Estoppel—Estoppel must be Pleaded.**

4. Before defendant can avail itself of estoppel in a law action it must set forth with precision the facts constituting the estoppel and reliance thereon.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This is an action at law prosecuted by the plaintiff as executor of the estate of James F. Mahon, against the Harney County National Bank of Burns, Oregon. The plaintiff sues to recover $2,127.07 deposited with the defendant bank by him as executor, and the further sum of $1,500, damages.

On June 16, 1917, the Harney County National Bank loaned to Ira Mahon the sum of $2,000. As evidence of such indebtedness, a joint and several promissory note was executed and delivered to the defendant bank by Ira Mahon and his father, James

---

2. Right of bank to set off against deposit debt due bank from depositor, see notes in 2 Ann. Cas. 206; 19 Ann. Cas. 487; 47 Am. St. Rep. 584; 9 A. L. R. 181.

F. Mahon. On December 18, 1917, they executed and delivered to the bank a renewal note, and on February 6, 1918, a second renewal note was made by them to the bank. In May thereafter James F. Mahon died, and Ira J. Mahon was appointed executor of his estate.

From the testimony of the cashier of the bank, it appears that on August 10, 1918, the second renewal note was returned to Ira J. Mahon, executor, and was replaced by a note signed by him, as executor of the estate. It was also stated by the witness that on November 9, 1918, this note was replaced by a note due three months from date, similarly executed and delivered, which is designated in the record as "Plaintiff's Exhibit 3"; that on the fifteenth day of February, 1919, Ira Mahon individually executed his promissory note for $2,000, which was held as collateral for the note marked "Plaintiff's Exhibit 3," and that this note was renewed on January 19, 1920, by another note executed by Mahon for the same purpose.

The complaint avers, among other things, that on November 4, 1920, the plaintiff, as executor of the estate of James F. Mahon, deceased, deposited in the defendant bank $5,003.92; that of such sum the defendant paid out on plaintiff's orders $2,876.85, leaving a balance of $2,127.07; that on the fourth day of November, 1920, defendant, without plaintiff's knowledge, and without authority from plaintiff so to do, took from the sum so deposited the remaining $2,127.07, and has refused to return such sum to the account of the estate.

The answer sets forth—

"That the said executor, plaintiff herein, had been and now is conducting and managing the said estate as a going concern, and for the purpose of so op-

erating, conducting and managing the said estate, the said plaintiff was borrowing said money as said executor, upon the credit of the said estate, and giving and executing promissory notes of said estate in evidence thereof, and as funds were received by him in operating, conducting and managing the said estate the same were applied in payment of the expenses thereof and paying off and taking up the notes heretofore mentioned.

"That the plaintiff, as such executor, made, executed, and delivered to the defendant herein, a number of notes upon the credit of the said estate prior thereto, and on the fourth day of November, 1920, the defendant held and owned one certain promissory note, dated November 9, 1918, which had been executed by the said plaintiff individually and as executor of the said estate of James F. Mahon, deceased, for the sum of $2,000, which said notes as to the principal and interest had not been paid, or any part thereof, and there was then due and owing upon said note as principal and interest, to the defendant on the said fourth day of November, 1920, the sum of $2,127.07, and that the said defendant, on said date, in the general course of business, paid and canceled the said note out of the funds so deposited by the said plaintiff and on the said fourth day of November, 1920, delivered to the said plaintiff, as executor of the said estate, the said note canceled and paid as hereinbefore stated; and that said note was taken and there charged to the account of the executor of the said estate of the said James F. Mahon, deceased."

The answer further alleges that plaintiff received the canceled note and retained possession thereof without objection until a short time prior to the commencement of this action, and has never offered to return the same.

The plaintiff replied by denying "each and every allegation contained in the affirmative answer of the defendant."

Trial by jury was had and a verdict returned in favor of the defendant. On October 10, 1921, plaintiff moved the court for its order "to set aside the judgment and verdict of the jury rendered on the eighth day of October, 1921, and for its further order entering judgment for the plaintiff in the sum of $2,127.07," with interest, and for costs, upon the grounds,—

"1. That the verdict of the jury is contrary to law.

"2. That the answer filed in said cause does not state any fact or facts which would constitute a defense to the matters set forth in plaintiff's complaint."

The motion was overruled. Judgment was awarded to defendant and against plaintiff. The plaintiff appeals, assigning error of the court in receiving and rejecting certain testimony; by its instructions to the jury, and in refusing to permit plaintiff to amend his complaint.  REVERSED.

For appellant there was a brief over the names of *Mr. Pat J. Gallagher* and *Mr. W. H. Brooke,* with an oral argument by *Mr. Gallagher.*

For respondent there was a brief over the names of *Messrs. Biggs & Biggs* and *Messrs. McCamant & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

BROWN, J.—Under the testimony adduced upon the trial of this cause, Ira Mahon and James F. Mahon, on June 16, 1917, made their joint and several promissory note in the sum of $2,000 to the Harney County National Bank of Burns, defendant herein. During the lifetime of James F. Mahon this note was twice renewed. After the death of James

F. Mahon and the appointment of Ira Mahon, his son, as executor, a new note was made in favor of the bank, and signed, "Ira Mahon. Mahon Estate, by Ira Mahon." The record fails to disclose what authority, pretended or otherwise, the executor had to make this note. Eighteen months after the death of James F. Mahon, his executor deposited $5,000 in the Harney County National Bank, to the credit of the estate. The bank, on its own initiative, applied $2,127.07 of this deposit to the payment of the indebtedness due it from the Mahon estate. The effect is to make the bank a preferred creditor. Was the procedure upon the part of the bank lawful? This is the question for determination.

1. The title of the personal property of the estate of James F. Mahon, deceased testate, vests in Ira Mahon, his personal representative, until the administration is settled. The title of the executor is exclusive. However, he has no beneficial interest in the personal property, but possesses it for the purpose of administration, and after the payment of the debts of the estate he is a mere trustee for those beneficially interested. He likewise is entitled to possession and control of the real property, and is authorized to receive the rents and profits thereof during the administration, or until the same is surrendered to the heirs or devisees by order of the court or judge thereof: Section 1185, Or. L.; *State* v. *O'Day,* 41 Or. 495 (69 Pac. 542); *Thorsen* v. *Hooper,* 57 Or. 75 (109 Pac. 388); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124); *Murphy* v. *Tillson,* 64 Or. 558 (130 Pac. 637); *Hadley* v. *Hadley,* 73 Or. 179 (144 Pac. 80); 24 C. J. 201.

In *Thorsen* v. *Hooper, supra,* this court said:

"The right which the law confers upon an administrator to take and hold the possession of the goods

and chattels of a decedent's estate is in the nature of a trust: Schouler's Executors and Administrators, § 242; 11 Cur. Law, 1307; *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 388, 883); *In re Roach's Estate,* 50 Or. 179 (92 Pac. 118)."

In *Casto* v. *Murray, supra,* it was written:

"Upon the death of any person intestate in this state, possessed of tangible goods and effects, such property passes by operation of law to his personal representative, who is entitled to the possession thereof until the administration is completed (B. & C. Comp., § 1147), and from whom only the title thereto can be derived in pursuance of orders made by the county court of the proper county in due course of administration: *Winkle* v. *Winkle,* 8 Or. 193; *Weider* v. *Osborn,* 20 Or. 307 (25 Pac. 715); *In re John's Will,* 30 Or. 494 (47 Pac. 351, 50 Pac. 226, 36 L. R. A. 242); *State* v. *O'Day,* 41 Or. 495 (69 Pac. 542)."

The County Court is vested by statute with exclusive jurisdiction over probate matters, and is empowered to direct and control the conduct and settle the accounts of executors, and to direct the payment of debts: Section 936, Or. L.

Section 1238 of our Code provides for giving notice to all persons having claims against the estate. Section 1240 relates to the presentation and verification of claims. Section 1282 provides for the filing of accounts by executors and administrators. This account must show the amount of money received and expended by him, from whom received and to whom paid, the amount of the claims presented, the names of the claimants, and other matter necessary to show the condition of the affairs of such estate. Section 1284 provides for an order for payment of the expenses, charges and claims. Chapter 9 of Title XVI, Or. L., relates to the payment of claims and charges. Section

1295 thereof provides for the order of payment, as follows:

"1. Funeral charges;

"2. Taxes of whatever nature due the United States;

"3. Expenses of last sickness;

"4. Taxes of whatever nature due the state, or any county or other public corporation therein;

"5. Debts preferred by the laws of the United States;

"6. Debts which, at the death of the deceased, were a lien upon his property, or any right or interest therein, according to the priority of their several liens;

"7. Debts due employees of decedent for wages earned within the ninety days immediately preceding the death of the decedent;

"8. All other claims against the estate."

Section 1298 of Chapter 9 provides that if the estate is insufficient to pay all claims of any one class, payment shall be made in proportion to the amount of such claims. Section 1301 provides that a debt due and payable is not entitled to preference over one of the same class not due, if the latter be presented within the same period.

The foregoing provisions of the probate law, regulating the administration of estates, are as applicable to banks as to individuals, and are binding alike upon the plaintiff and the defendant.

2. It is well settled that money on general deposit in a bank is the property of the bank; that the relation of debtor and creditor exists between the bank and its depositor, and the bank is entitled to apply such deposit on a note due from the creditor.

In his lifetime James F. Mahon was a joint and several maker of a promissory note for $2,000, to the Harney County National Bank, of Burns, Oregon.

If he had a deposit in the bank when that note became due, the bank was authorized to apply such deposit to the satisfaction of the indebtedness due it, as evidenced by the note.

In 7 C. J. 653, we read:

"As a general rule, a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor, and may apply the debtor's deposits on his debts to the bank as they become due."

This principle is supported by authorities too numerous to cite.

3. The rule, however, does not apply to the facts in this cause. The deposit of the money appropriated was made by the executor in the course of his administration of the business affairs of the estate. There is no right of setoff against a trustee depositor: *Sanford* v. *Pike*, 87 Or. 614 (170 Pac. 729, 171 Pac. 394); *Cent. Nat. Bank* v. *Conn. Mut. L. Ins. Co.*, 104 U. S. 71 (26 L. Ed. 700, see, also, Rose's U. S. Notes); *Union Stock Yards Nat. Bank* v. *Gillespie*, 137 U. S. 411 (34 L. Ed. 724, 11 Sup. Ct. Rep. 118). In order to counterclaim, the debt must be between the same parties and the same right: Morse on Banks & Banking (4 ed.), par. 334.

It is stated by the editors of R. C. L. that:

"Where an executor or administrator sues for a debt arising after the death of the decedent, the defendant cannot set off a debt to him from the decedent * * ." 11 R. C. L. 265; 24 R. C. L. 873, and authorities in notes.

To similar effect is 7 C. J. 658.

A well-known authority on the law of administration of estates has written:

"The defendant in a suit by an administrator upon an indebtedness accrued after the grant of letters

cannot be allowed to set off a claim which he may have against the deceased; because to do so would give him an undue advantage over other creditors, if the estate should prove insolvent." The American Law of Administration, 2 Woerner (2 ed.), 828.

Chancellor KENT, in *Dale* v. *Cooke,* 4 Johns. Ch. (N. Y.) 11, 15, says:

"Here was an application to set off a debt arising on a contract with an executor, against a debt arising on a contract with a testator. They are not debts due to and from the same persons, in the same capacity, and there is no mutuality. It would be confounding the contracts of testators with the contracts of executors."

In the case of *Laighton et al., Exrs.,* v. *Brookline Trust Co.,* 225 Mass. 458 (114 N. E. 671, L. R. A. 1917C, 129), it was said:

"In an action by or against an executor or administrator, the statute (Rev. Laws Mass., Chap. 174, § 6) permits the defendant to set off a claim due to or from the testator or intestate, and the remaining question is, whether the amounts deposited by the plaintiffs after the testator's decease can also be set off in payment of the defendant's claim. The statute is doubtless remedial in its nature, and is to be given a broad and liberal construction. Still we are of opinion that it ought not to be so interpreted as to allow a setoff of that part of the account which has been deposited by the plaintiffs of money belonging to the estate. We think that the right to setoff is limited to the balance of the deposit as it existed at the time of the testator's death. It could not successfully be contended that if, upon the appointment of the plaintiffs as executors, they had opened a new account and made deposits therein, the defendant could have set off its claim against such account. * * To hold otherwise would permit the defendant to obtain an inequitable preference which would be unjust to other creditors."

In *Padgett* v. *Bank*, 141 Mo. App. 374 (125 S. W. 219), it was held that money belonging to an estate of a decedent deposited in the bank after his death could not be counterclaimed against debts owed to it by the decedent. The money received was held to be an asset accruing to the administrator, and, notwithstanding that during the life of the intestate the bank had a right to offset one claim against another, the death closed the account between them and the bank should have turned the money afterwards received over to the administrator, probated its claims against the estate, and taken its chances with the other creditors as to their payment. This principle is likewise supported by the following authorities: *Patterson* v. *Patterson*, 59 N. Y. 577 (17 Am. Rep. 384); *Golding* v. *McCall*, 5 Ga. App. 545 (63 S. E 706); *Printey* v. *Cahill*, 235 Ill. 534 (85 N. E. 753); *Harding* v. *Shepard*, 107 Ill. 264; *Cummins* v. *Williams*, 5 J. J. Marsh. 384; *Seaver* v. *Weston*, 163 Mass. 202 (39 N. E. 1013); *Woodward* v. *McGough*, 8 Mo. 161; *Colby* v. *Colby*, 2 N. H. 419; *Shaw* v. *Gookin*, 7 N. H. 16; *Mercein* v. *Smith*, 2 Hill (N. Y.), 210; *Irving* v. *DeKay*, 10 Paige (N. Y.), 317; *Lawrence* v. *Vilas*, 20 Wis. 382.

4. The defendant asserts that the plaintiff is estopped from maintaining this action. The answer affirmatively avers certain acts, but does not plead them as an estoppel. Before the defendant bank can avail itself of the defense of estoppel in an action at law, it must set forth with precision the facts constituting the estoppel, and must aver reliance thereon. See Oregon decisions cited in *Couch* v. *Scandinavian-American Bank*, 103 Or. 48 (197 Pac. 286).

We have read the evidence with much care, but fail to find that the bank ever loaned to the execu-

tor, as such, a single dollar. As we read the record, the liability of the estate of James F. Mahon to the defendant bank is due to the act of Mahon in making a joint and several note to the bank, and does not arise from any act of the executor, as such officer.

The answer avers that the executor conducted the estate as a going concern. This the reply denies.

"Where an executor or administrator acts without authority in employing the assets of the estate in business, all debts contracted in the course of such business are the personal debts of the representative, and the creditor cannot hold the estate, nor can the representative look to the estate for reimbursement." 24 C. J. 61.

The defendant contends that "when we alleged affirmatively in our answer that the plaintiff had borrowed money on behalf of the estate, the presumption arose that he had done so in a lawful way," and invokes subdivisions 15 and 34 of Section 799, Or. L., in support thereof.

In the case of *Hunt* v. *First Nat. Bank,* 102 Or. 398 (202 Pac. 564, 565), this court said:

"It is one thing to plead a fact. It is quite another thing to rely upon a presumption which might be admitted in evidence to establish that fact. The presumption mentioned is a rule of evidence, not of pleading. If the plaintiff would enjoy the benefit of the presumption, he must state in his pleading a fact for the proof of which he might rely upon the presumption."

We have already said that the executor borrowed no money for the estate.

There is no merit in the contention that the court erred in refusing to permit plaintiff to amend his complaint or to admit testimony relating to certain contingent profits that might have accrued to the estate, because the law is:

"Where an injury consists of a deprivation of money, the compensation established by the business practice of many generations is the current rate of interest; and such is the measure of damages adopted by the law. The profits which might have been made by the use of the money are too conjectural to be considered." 1 Sedgwick on Damages (9 ed.), § 179.

This case is reversed.                    REVERSED.